GULF, COLORADO & SANTA FE RAILWAY COMPANY v. TEE COOPER.

Decided October 23, 1903.

**1.—Practice—Verdict—Charge of Court.**

The appellate court will not disturb the finding of a jury in favor of plaintiff, predicated upon conflicting evidence, especially when the charge imposed upon the plaintiff a greater burden of proof than the law requires. And note that upon the facts, the verdict is sustained.

**2.—Same.**

A charge of the court not warranted by the proof in the case, is properly refused.

**3.—Same—Contributory Negligence.**

It is only when contributory negligence is shown as a matter of law, that the burden is thrown upon the plaintiff to relieve himself of contributory negligence.

**4.—Same—Evidence.**

There was no error in the admission in evidence of mortality tables in order to show life expectancy, notwithstanding the injury to the plaintiff did not result in entire disability.

**5.—Judgment for Attorney's Fees.**

That the court rendered judgment assigning half the verdict to the attorneys in accordance with a previous contract in writing with the plaintiff, as a contingent fee, is not a matter of which the appellant can complain.

Appeal from the District Court of Montgomery. Tried below before Hon. L. B. Hightower.

*J. W. Terry, F. C. & R. C. Duff,* and *D. W. Glasscock,* for appellant.

*J. Llewellyn,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is an appeal by the railway company from a judgment rendered against it in favor of the appellee, Tee Cooper, for damages alleged to have been suffered by him through the negligence of appellant's employes in charge of one of its engines while he was in the discharge of his duty as brakeman on one of appellant's freight trains. The negligence alleged was the act of the engineer in running or backing the engine and tender against the front car of a freight train without warning or signal, and in violation of a signal from appellee while the latter was engaged in adjusting the drawhead preparatory to making the coupling to the tender.

The defendant answered by general denial and pleas of assumed risk and contributory negligence.

The following brief statement of the facts will serve the purposes of this opinion.

In September, 1902, plaintiff was in the employ of defendant as head brakeman on a freight train and was engaged in the performance of his duties as such on the night of the accident. When the train he was on reached a point near the East San Jacinto River, the engine and tender were detached from the train of cars and run a short distance

west for the purpose of getting water. Immediately thereafter the engine and tender was backed to within a short distance of the train when, in response to a stop signal from plaintiff, the engine was stopped within twelve or fifteen feet of the front car. Plaintiff then went upon the track to pull the drawhead to a position which would enable it to couple automatically by impact with the tender coupler. Just as he took hold of the drawhead, and while he was looking toward it and not toward the tender, the engineer backed the engine and tender against the car, injuring plaintiff as alleged. The engine was thus backed without signal from plaintiff, without his knowledge, and without warning either by bell, whistle or otherwise.

The coupling apparatus was of the automatic kind which, when in good order, coupled by impact of the approaching car without the necessity of going between the cars for any purpose.

The night was dark and the signals were given by lanterns. Plaintiff had a lantern which, before he went upon the track, was seen by the engineer on the outside of the track. When plaintiff was at the drawhead the plaintiff's lantern was held just outside the rail.

The engineer and fireman both testified that they did not know the plaintiff had gone between the cars and supposed he was on the outside of the track. That the engine was stopped in a short distance of the car in response to his signal, is shown without dispute, and there is evidence to support the conclusion that it was backed upon plaintiff without his knowledge, and without signals from or warning to him.

The main points of controversy are the condition of the drawheads and the necessity for plaintiff to go between the cars. The evidence is conflicting, the defendant making a strong showing from several witnesses that the apparatus was in perfect condition. This was corroborated by the fact that the coupling was actually made notwithstanding the accident. On the other hand, it was undisputed that when plaintiff undertook to make the same coupling at Beaumont on the same trip it required two efforts to do so, and plaintiff testified that the drawhead would get out of line and it was necessary to place it in line and hold it until the coupling was made, and he further stated that on the occasion of the accident he had pulled the car drawhead when the tender struck him. It is fair to consider further in this connection the fact that plaintiff was actually between the cars for some purpose or the accident would not have happened. It will not do to say he was there without motive, for to place himself in a position of great danger without any reason would be against nature. It is not difficult to credit his statement that he at least believed the drawhead needed adjustment in view of his experience with it at Beaumont. That he gave a silly or impossible explanation as to the cause of the deflection of the drawhead does not necessarily prove that his story is false. It simply shows that, without any knowledge as to the part of the mechanism of the drawheads underneath the cars, he was advancing the theory as to the cause of the deflection.

Upon the issue of the reason for his presence between the cars the trial court imposed perhaps a greater burden upon the plaintiff than the law required, for the charge required him to establish a necessity for his presence there rather than that a reasonably prudent man would have believed his presence between the cars was necessary under the circumstances and would have so acted.

On this issue the jury have found in favor of plaintiff, and we do not feel authorized to disturb the finding.

On the issue of whether plaintiff saw, or ought to have seen, the tender when it began to approach the second time, the trouble with plaintiff's proof is the presence of some confusion and apparent contradiction in his own statement. There is no opposing testimony, the plaintiff being the only witness to his own acts immediately preceding and attending the accident. The conflicts and confusion are more apparent than real when the entire statement of plaintiff is considered together. That he did not actually see or hear the engine's approach after it stopped in response to the stop signal goes without saying, for being sane, even if he remained between the cars, he could and would have assumed such position as to escape injury. That the space between the cars was ample for his safety after the drawheads touched is evidenced by the nature of his injury, which was to his foot and the lower part of his leg, the body being uninjured.

The engineer says he approached the car gently. The plaintiff says the approach was rapid and sudden. The nature of the injuries corroborates the plaintiff's statement in this respect, for the cars must have been moved considerably by the impact to go far enough to catch the plaintiff's foot.

That he was not negligent in failing to see its approach is not an unreasonable conclusion, because the approaching engine had stopped in response to his stop signal, and it being the manifest duty of the engineer not to approach again without a signal, a reasonably prudent man might, as plaintiff did, have fastened his attention for a moment on the car drawhead, resting in the belief that the engineer would not move until signaled again.

It may be safely said the following facts are amply established:

First. That the engine stopped in response to plaintiff's stop signal, and he went to the car drawhead in the belief that it needed adjustment in order to be successfully coupled.

Second. That while between the cars the engineer, without further signal, backed the engine against the car without plaintiff's knowledge and mashed his foot, rendering amputation necessary.

That the engineer was negligent in backing the train without further signal and without warning it seems to us is apparent. We find, therefore, that the verdict is supported by the evidence, and thus dispose of the assignments addressed to its sufficiency upon the issues above discussed.

We will now dispose of such assignments as present questions of law.

Under the first, second and sixth assignments appellant contends that because plaintiff after learning of the defect in the coupler continued in the service of defendant he assumed the risk thereof.

This proposition would be sound if he complained that he was injured by the defective coupler, but the principle invoked can have no application here. Will appellant contend that the brakeman who goes under a car to adjust a broken brakebeam assumes the risk of the engineer starting the train and crushing him without warning?

Under the seventh assignment appellant contends that plaintiff can not recover because it was shown that he was familiar with rule No. 313, which directs employes never to place themselves in a dangerous position until they know the engineer has seen and obeyed the signal, and in no instance to act upon the assumption that it will be obeyed. A complete answer to this contention is the testimony of plaintiff, found by the jury to be true, to the effect that his stop signal was obeyed and the engine still when he went between the cars.

By the tenth assignment appellant complains of the refusal of the trial court to charge upon certain rules of the company and to instruct the jury that if plaintiff, when injured, was acting in violation of such rules he could not recover.

Rule No. 312, embodied in the charge requested and refused, was upon the subject of exposing the hands and arms to defective or ill fitting coupling apparatus. As the injury in question was not caused by defective apparatus, the charge was erroneous and should not have been given.

The case was tried in part upon the provisions of rule No. 313, and the rule itself was given to the jury in a special charge.

Rule 314 referred to the danger of going in between cars while in motion, and there is no contention that plaintiff violated such rule.

Rule 417 requires train operatives to inspect the train at every stop and report to the conductor any defective apparatus. As there is no connection between the accident and a violation of this rule if shown, it is manifest the charge was rightly refused.

The appellant asked the court to charge that the burden of proof was on the plaintiff to relieve himself of the suspicion of contributory negligence, and complains of the court's refusal to give it.

It is clear that contributory negligence was not shown as matter of law, and unless this was done it is well settled that such a charge would be error. Railway Co. v. Sheider, 88 Texas, 158.

The point is made under the eighth assignment that as the injury to plaintiff, though permanent, did not result in entire disability, it was error to allow proof of his life expectancy by the introduction of mortality tables.

We are aware that the point has been sustained by our Supreme Court and other courts of civil appeals in this State. Railway v. Douglas, 69 Texas, 699; City of Honey Grove v. Lancaster, 50 S. W. Rep., 1053; Railway v. Nelson, 49 S. W. Rep., 713. But in Railway v. Cooper, 2

Texas Civ. App., 42, this court after a review of the authorities announced a different rule and the Supreme Court refused writ of error in the case. We believe the weight of reason is with the rule as then announced, and we are of opinion the refusal of writ of error should be treated as an approval of the doctrine by our courts of last resort. The objection that the mortality table admitted in evidence was not sufficiently identified as in general use, is without merit.

The plaintiff agreed that the court might render judgment in favor of his attorney, Lewellyn, for half the amount recovered, that sum having been theretofore assigned to him in writing as a contingent fee. The judgment was accordingly so rendered. By appropriate assignments of error this feature of it is assailed. We are of opinion that if error it in nowise affects appellant, and its complaint in this respect ought not to be allowed.

The other assignments need not be mentioned in detail. They are believed to be without merit.

The general charge of the trial court, together with the special charges given, fairly and correctly submitted the cause to the jury and the issues were determined in favor of plaintiff. The controlling inquiry was one of credibility of witnesses, a matter in which appellate courts for excellent reasons rarely if ever interfere. The plaintiff's testimony supplies every element necessary to establish liability, and we do not regard it as a case calling for interference on our part upon that ground.

The judgment is affirmed.

*Affirmed.*