FEDERAL LIFE INSURANCE COMPANY *v.* MAXAM ET AL.

[No. 9,327. Filed November 22, 1917. Rehearing denied February 26, 1918. Transfer denied May 28, 1919.]

1. TRIAL.—*Conclusions of Law.—Exceptions.—Effect.*—By excepting to the conclusions of law appellant concedes, for the purposes of the exception, that the facts within the issues are fully and correctly found. p. 277.

2. INSURANCE.—*Life Insurance.—Reinsurance Contract.—Imposing Conditions on Policyholders.*—A life insurance company which contracted with another company to reinsure the latter's policyholders had no legal right to charge liens against a policy in the other company, or to increase the holder's annual premium, and such policyholder had the right to stand on his contract for insurance as evidenced by his original policy. p. 277.

3. INSURANCE.—*Life Insurance.—Reinsurance.—Breach of Policy Conditions.—Rights of Policyholder.*—Where a life insurance company entered into a contract under which it acquired the assets of another company and agreed to reinsure its policyholders, but refused to carry out a policy or to continue the insurance in force unless the holder of such policy ratified illegal liens charged against it and paid an increased amount of premium wrongfully demanded of him, such action was a breach of the reinsurance contract and a repudiation of the policy giving the holder the right to elect the remedy invoked by him of treating the contract as breached and suing to recover the damages sustained by him on account thereof. p. 278.

4. CONTRACTS.—*Executory.—Breach.—Remedies.*—Where one party to an executory contract repudiates it and refuses longer to be bound, the injured party has the right to elect either to treat the contract as rescinded and recover upon the *quantum meruit* as far as he has performed, where the contract is of such a nature that there may be a recovery for part performance, or to keep the contract alive for the benefit of both parties, keeping himself at all times ready, willing and able to perform, and, at the time fixed by the contract for performance, sue and recover according to the terms of the contract on the theory that he has fully performed and discharged all the duties and obligations imposed upon him, except as prevented by the other party, or to treat the breach or repudiation as putting an end to the contract for all purposes of performance, and to sue at once to recover the damages occasioned by such repudiation, in which case the injured party is not bound to give further notice to the defaulting party of his election before bringing suit, nor to show, as a condition precedent to recovery, that he has been at all times ready, willing and able to perform after the time when the other party repudiated the contract. p. 278.

5. ELECTION OF REMEDIES.—*Breach of Contract.—Action.—Notice.*—The bringing of an action, or taking legal steps to enforce a contract, amounts to an election by the party not to rescind on account of anything known to him, and where a party institutes a suit for damages for the breach of an executory contract, his

action is notice to the other party of his election to treat the contract as breached and at an end, except for the purpose of ascertaining the resulting damages, and such election is conclusive against the party making it. p. 284.

6. APPEAL.—*Review.—Ruling on Demurrer.—Failure to Specify Defects.—Waiver.*—Any error based on defects in a complaint which are not specified in the memorandum accompanying the demurrer is waived. p. 285.

7. APPEAL.—*Assignments of Error.—Causes for New Trial.*—Attempted assignments of error which, if proper at all, deal with matters that should be assigned as grounds for a new trial, present no questions on appeal. p. 286.

8. NEW TRIAL.—*Grounds.*—Under the statute (§585 Burns 1914, §559 R. S. 1881), assignments that "the decision and judgment of the court are not sustained by sufficient evidence" and "because the decision and judgment of the court are contrary to law," are unauthorized and cannot be recognized as grounds for a new trial. p. 286.

9. NEW TRIAL.—*Grounds.—Excessive Damages.—Statute.—Applicability.—Torts.*—Section 585, subd. 4, Burns 1914, §559 R. S. 1881, authorizing the granting of a new trial for excessive damages, applies only in cases of torts. p. 286.

10. ACTION.—*Ex Contractu.—Ex Delicto.*—In a suit for damages for the breach of a contract, the action arises out of the agreement of the parties, and is generally denominated an action *ex contractu*, but the right of action for a tort arises out of a breach of duty fixed by law, independent of the will or agreement of the parties, and is usually denominated an action *ex delicto*. p. 287.

11. NEW TRIAL.—*Grounds.—Excessive Damages.—Breach of Contract.*—Section 585, subd. 5, Burns 1914, §559 R. S. 1881, authorizing a new trial for excessive recovery where the action is upon contract, was properly followed by defendant, in an action for breach of an insurance contract, in seeking a new trial on the ground that the amount of recovery was erroneous in that it was too large. p. 287.

12. APPEAL.—*Review.—Merit Fairly Tried.—Affirmance.*—Where it appears that the case was fairly tried and a correct result reached, and that appellant was deprived of no substantial right, the judgment will be affirmed. p. 288.

13. NEW TRIAL.—*Grounds.—Sufficiency.*—An assignment as ground for new trial that certain enumerated special findings "are not nor are either of them sustained by sufficient evidence" is unauthorized by statute (§585 Burns 1914, §559 R. S. 1881), and insufficient. p. 289.

From Posey Circuit Court; *Herdis Clements,* Judge.

Action by Sylvester A. Maxam against the Federal Life Insurance Company and another. From a judgment for plaintiff, the defendant named appeals. *Affirmed.*

*C. A. Atkinson, Sanford Trippett* and *Larz A. Whitcomb,* for appellant.

*J. Morton McDonald,* for appellees.

FELT, J.—This is a suit by Sylvester A. Maxam against Federal Life Insurance Company and Mary A. Maxam, for the damages alleged to have been sustained by Sylvester A. Maxam, hereinafter referred to as appellee, because of the wrongful cancellation or lapsing of a policy of life insurance issued upon his life in the sum of $2,500, payable to his wife, Mary A. Maxam, who filed an answer showing an assignment and transfer to appellee of whatever interest she had in the policy, or rights growing out of its cancellation.

The complaint was in one paragraph to which an answer in three paragraphs was filed by the insurance company. The first was a general denial, the second a plea of the six-years' statute of limitations, and the third set up matter in bar of the action. A demurrer for insufficiency of facts was sustained to the third paragraph.

The case was tried by the court and upon due request the facts were found specially on which the court stated its conclusions of law which were in favor of appellee.

Appellant's motion for a new trial was overruled, and judgment rendered on the conclusions of law for

$1,035.74 and costs. From this judgment appellant appealed and has assigned numerous alleged errors, including an assignment that the court erred in overruling the demurrer to the complaint, sustaining the demurrer to the third paragraph of answer, and in each conclusion of law.

Appellee contends that neither the complaint copied into the transcript, nor the memoranda accompanying the demurrer, is sufficiently identified by the record to enable the court to consider and pass upon any questions depending upon a consideration of these instruments.

The identification is not free from doubt, but the court is warranted in treating the instruments copied into the transcript as the pleadings on which the case was tried, and, inasmuch as practically the same questions arise on the exceptions to the conclusions of law as are attempted to be presented in relation to the complaint and answer, we believe the substantial rights of the parties may be determined by considering the questions raised by the exceptions to the conclusions of law and the assignments of errors based thereon. *Bright Nat. Bank* v. *Hartman* (1916), 61 Ind. App. 440, 109 N. E. 846, and cases cited; *Evansville Furn. Co.* v. *Freeman* (1915), 57 Ind. App. 576, 581, 105 N. E. 258, 107 N. E. 27; *Judy* v. *Jester* (1913), 53 Ind. App. 74, 84, 100 N. E. 15.

The finding of facts states in substance that appellant is a corporation organized under the laws of the State of Illinois and authorized to transact the business of life insurance on the legal reserve plan; that the Model Life Insurance Company is a corporation organized under the act of March 9, 1897, Acts 1897 p. 318, §4739 Burns 1914, passed by the general as-

sembly of Indiana; that on April 21, 1900, the Model Life Insurance Company, hereinafter denominated the Model, issued to appellee a life insurance policy for $2,500, payable to his wife Mary A. Maxam, which called for an annual premium of $58.82, and likewise at the same time issued to him a co-operative certificate by the terms of which, in consideration of the rendition of certain services, he was to receive a stipulated compensation to be credited upon his annual premium; that on March 12, 1904, appellant and the Model entered into a certain written contract, pursuant to §15 of the act of March 9, 1897, Acts 1897 p. 318, §4753 Burns 1914, by which appellant acquired all the assets of the Model and undertook to reinsure all the policyholders of the Model, including appellee; that no written or printed notice was mailed to appellee at least thirty days before the day fixed for the meeting of the insured called to consider the contract of transfer or reinsurance aforesaid, and appellee had no notice or knowledge of such meeting prior thereto; that by the terms of the contract between said companies an attempt was made to authorize appellant to charge up as a lien against each of the policies held by the Model "an amount equal to the terminal reserve which should have accumulated to the credit of the respective policies" with stipulated interest charges thereon, and the right to charge against each of such policies an additional reserve lien annually from and after the date of such contract amounting to the difference between the premium theretofore paid annually by any of such policyholders and the annual premium rate of appellant for a like policy to the age of entry of such policyholder, to bear five per cent. per annum from the day so charged until paid;

that the provisions of such contract and those of the policy issued by the Model to appellee relating to the premiums to be paid are different and wholly inconsistent; that appellee was wholly ignorant of the provisions of the aforesaid contract between said companies, and did not become aware of them until about April 1, 1910; that on March 12, 1904, appellant issued to appellee a certain policy of reinsurance as follows: (The provisions of this instrument are identical with those of the one set out in *Federal Life Ins. Co.* v. *Kerr* [1910], 173 Ind. 613, 615, 616, 89 N. E. 398, 91 N. E. 230, and will not be repeated here.)

That appellant did not inform appellee of the provisions of said reinsurance contract in reference to liens until about April 1, 1910; that appellee made no inquiry of appellant, and did not attempt to ascertain the terms and conditions of the contract between said companies, but could have obtained full information in regard thereto had he made request therefor; that when appellant issued to appellee the aforesaid reinsurance policy for the purpose of inducing him to accept and retain the same and continue to pay premiums thereon, it represented to appellee, with intent to have him rely thereon, that appellant had reinsured and assumed the policies of the Model, including that of appellee, subject to the terms of the aforesaid contract, and that in accordance therewith it would continue appellee's policy in force by his "paying to it the premiums as and when required by the terms of said Model policy"; that appellee relied upon the aforesaid representations as true, and did not know the aforesaid contract purported to authorize the charging of the aforesaid liens against his policy; that he relied on the statements and representations

aforesaid, and in pursuance thereof annually paid to appellant on or before the 21st day of April of each year the sum of $58.82, which was the full amount of premium due on the policy issued him by the Model; that appellant accepted the same and still retains the amount so paid; that appellant continually from the issuance of said reinsurance contract up to April 1, 1910, stated and represented to appellee and led him to believe that the full amount of annual premium due from him on said policy was $58.82; that on or about April 1, 1910, appellant notified appellee that the amount of his annual premium on said policy was $80.50 instead of $58.82, and that the same would be due on April 21, 1910; that on March 12, 1904, appellant, without appellee's knowledge or consent, charged against his policy a reserve lien of $151.30, and has annually charged against the same five per cent. interest, and has also in like manner annually charged against said policy a lien of $21.68 and five per cent. interest thereon; that when appellee was, on or about April 1, 1910, notified that his premium was $80.50, he requested an explanation, and was informed for the first time that appellant claimed to hold a lien against his policy in the sum of $357.20 which would have to be paid or would be deducted, with five per cent. interest per annum from his policy at maturity, and that to keep the policy alive he must pay $80.50 annually; that thereupon appellee refused to pay any further premiums on said policy and elected to treat the same as breached; that appellant insisted on its right to so charge and hold said liens against his policy, and refused to continue the same in force unless he recognized the existence and validity of said liens and would pay the increased premium

of $80.50, and thereupon appellant declared the aforesaid policy of appellee lapsed by reason of the failure and refusal of appellee to pay said increased premium on or before April 21, 1910; that appellee was at that time fifty years of age and in good health; that at that time the usual and ordinary rate of annual premiums charged by reputable life insurance companies doing business in the State of Indiana "for a whole life participating policy of life insurance like the one held by appellee in the Model," at age fifty was from $113.63 to $121.23; that at that time appellee's life expectancy was twenty-one years; that appellee has done and performed all the things required of him by his policy of insurance, the co-operative certificate, and by the policy of reinsurance issued to him by appellant; that neither of the policies aforesaid issued to him had any cash surrender value in April, 1910; that Mary A. Maxam, before the commencement of this suit, assigned to appellee, in writing, all her right and interest in, to and under the aforesaid policies issued to appellee; that appellant "has breached and broken the policy of insurance and policy of reinsurance aforesaid, and appellee has been damaged thereby in the sum of $1,035.74.

On the foregoing finding of facts the court stated conclusions of law, in substance, as follows: (1) That the acts of appellant in charging the aforesaid liens against appellee's contract of insurance was a wrongful and unlawful violation of appellee's rights, and an unwarranted breach of the policy of reinsurance issued to appellee. (2) That the act of appellee in increasing the annual premium on appellee's policy from $58.82 to $80.50 was wrongful and an unlawful violation of the reinsurance policy issued to appellee.

(3) That the rights of the parties under the policy of reinsurance issued to appellee were fixed and measured by the terms of the original policy issued appellee by the Model Life Insurance Company, and were not changed by any contract between the said company and appellant, to which appellee did not assent or which he did not ratify. (4) That the act of appellant in lapsing appellee's policy for failure or refusal to pay the premium of $80.50 demanded thereon, on or before April 21, 1910, or within thirty days thereafter, was wrongful and an unlawful violation of appellee's rights under the policy of reinsurance issued to him, and was a breach of his contract of insurance. (5) That Mary A. Maxam has no right, title, or interest in the aforesaid policy. (6) That appellee is entitled to recover from appellant $1,035.74.

The contract between the two insurance companies, the reinsurance policies or contract issued to policyholders of the Model Life Insurance Company, and the rights of the persons holding policies issued by that company and outstanding when appellant took over the business of the Model, have been considered by the Supreme Court and by this court in several cases, and many of the questions involved in this appeal are fully settled by the decisions in those cases. *Federal Life Ins. Co.* v. *Kerr, supra; Federal Life Ins. Co.* v. *Arnold* (1910), 46 Ind. App. 114, 90 N. E. 493, 91 N. E. 357; *Federal Life Ins. Co.* v. *Risinger* (1910), 46 Ind. App. 146, 91 N. E. 533; *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256, 97 N. E. 1011; *Federal Life Ins. Co.* v. *Lillibridge* (1912), 51 Ind. App. 704, 98 N. E. 1015.

Among the propositions determined by the forego-

ing decisions which are applicable to the case at bar are the following: (1) The instruments involved are to be liberally construed in behalf of the insured, so as to effectuate the evident intention of providing and securing indemnity. Doubts are to be solved in favor of the insured, and equivocal or doubtful provisions will be strictly construed against the insurance company on the theory that such contracts are carefully prepared by such companies and the parties do not stand upon the same level as to the meaning and interpretation of such instruments. (2) The statute (§4753 Burns 1914, §15, Acts 1897 p. 318) which authorizes the reinsurance contract involved in this suit will be considered as entering into and forming a part of such contract. (3) That appellant's liability to the holder of a policy in the Model Life Insurance Company, reinsured by it, is fixed and measured by the policy originally issued to and held by such person at the time the reinsurance contract was entered into, and such insurance companies cannot by contract between themselves minimize or change such insurance, or increase the cost thereof to the insured, or charge up against his policy any sum or amount, or create any lien against the same, unless authorized by the policy of insurance issued by the Model Life Insurance Company and held by the insured at such time. (4) The statute only authorized the reinsurance of the risks evidenced by the original policies issued by the Model Life Insurance Company and outstanding at the time the reinsurance contract was executed, and the rights of the holders of such policies as they existed at such time were not cut down or changed by the provisions of the aforesaid contract between the companies. (5) The

provisions of the reinsurance contract which are in antagonism with the rights of the insured, as fixed by the policy of the Model Life Insurance Company, are void as to the holder of such policies.

1. By excepting to the conclusions of law appellant concedes for the purposes of such exception that the facts within the issues are fully and correctly found.

Appellant contends that the facts found fail to show such a breach of the contract of insurance as warranted appellee in instituting a suit for damages for its breach or repudiation; that before instituting such suit appellee was required by the law to notify appellant of his election to treat the contract as breached and at an end, except for the purpose of maintaining an action for damages for such breach; that a prerequisite to the maintenance of such suit is the establishment of the fact that appellee was able, ready and willing to carry out his part of the contract and the court has wholly failed to find such fact, which under the issues is a finding against appellee upon the issuable fact of his ability and willingness to pay the premium due under his contract.

2. Under the decisions rendered by the Supreme Court and by this court, involving the identical reinsurance contract and similar policies, appellant had no legal right to charge liens against appellee's policy or to increase his annual premium.

The finding of facts also shows that after appellee was apprised of the increase of his premium and required to pay the same, in response to his inquiry for an explanation, he was informed by appellant that his policy would not be continued in force unless he recognized and acknowledged the existence and validity of

such liens and charges against his policy and paid the increased premium demanded of him; that he refused to acknowledge the validity of such liens and to pay the increased assessment, whereupon thereafter, and before the bringing of this suit, appellant declared appellee's policy lapsed by reason of his failure and refusal to pay such increased premium.

Appellee had the right to stand on his contract for insurance as evidenced by his original policy.

Appellant wrongfully, in violation of its obligation to carry out such contract as it existed when the reinsurance contract was entered into, refused

3.   so to do, or to continue the insurance in force unless appellee ratified the illegal liens charged against his policy and paid the increased amount of premium wrongfully demanded of him. Such action on the part of appellant was a breach of the reinsurance contract entered into by it and a repudiation of the policy held by appellee which appellant was bound to honor. Such breach and repudiation gave appellee the right to elect the remedy invoked by him of treating the contract as breached and suing to recover the damages sustained by him on account thereof.

Where one party to an executory contract repudiates it and refuses longer to be bound by it, the injured party has the right to elect to pursue

4.   either of several remedies: (1) Where the contract is of such a nature that there may be a recovery for part performance, the injured party may treat the contract as rescinded and recover upon the *quantum meruit* as far as he has performed. (2) He may keep the contract alive for the benefit of both parties, being and keeping himself at all times ready, willing and able to perform his part of the contract,

and at the time fixed by the contract for performance, sue and recover according to the terms of the contract on the theory that he has fully performed and discharged all the duties and obligations imposed upon him by the contract, or has done so except as prevented by the other party. (3) Or he may treat the breach or repudiation as putting an end to the contract for all purposes of performance, and sue at once to recover the damages occasioned by such repudiation or wrongful refusal to carry out the contract according to its terms.

In the latter instance the injured party is not bound to give further notice to the defaulting party of such election before bringing suit, and is not bound to show as a condition precedent to a recovery that he had been at all times ready, willing and able to perform his part of the contract, after the time at which the other party repudiated the contract. If he was not in default at the time of such repudiation, and was adhering to and honoring the contract when repudiated by the other contracting party, he has discharged the obligations imposed upon him, and upon his election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are fixed and the contract is at an end except for the purposes it may serve in such suit for damages for its breach. *Anvil Mining Co.* v. *Humble* (1894), 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; *Roehm* v. *Horst* (1900), 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, 957; *Lake Shore, etc., R. Co.* v. *Richards* (1894), 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33, and notes; *Bond* v. *Carpenter* (1887), 15 R. I. 440, 441, 8 Atl. 539; *People, etc.* v. *Empire, etc., Ins. Co.* (1883), 92 N. Y. 105; *Mutual Reserve, etc.,*

*Assn.* v. *Taylor* (1901), 99 Va. 208, 37 S. E. 854; *Fort* v. *Iowa Legion, etc.* (1910), 146 Iowa 183, 123 N. W. 224; *Supreme Council, etc.* v. *Black* (1903), 123 Fed. 650, 59 C. C. A. 414; *O'Neill* v. *Supreme Council, etc.* (1904), 70 N. J. Law 410, 57 Atl. 463, 1 Ann. Cas. 422; *Strause* v. *Insurance Co.* (1900), 126 N. C. 223, 35 S. E. 471, 54 L. R. A. 605; *Indiana Life Endowment Co.* v. *Carnithan* (1916), 62 Ind. App. 566, 109 N. E. 851, 854, and cases cited; *Phoenix, etc., Ins. Co.* v. *Hinesley* (1881), 75 Ind. 1, 12; *Willcuts* v. *Northwestern, etc., Ins. Co.* (1882), 81 Ind. 300, 312; *Wagner* v. *Supreme Lodge, etc.* (1917), 64 Ind. App. 510, 116 N. E. 91, 96, and cases cited.

In *United States* v. *Behan* (1884), 110 U. S. 338; 4 Sup. Ct. 81, 28 L. Ed. 168, the Supreme Court of the United States, in distinguishing between suits upon contract or upon the *quantum meruit* where one party had put an end to the contract, and actions for damages occasioned by the breach or repudiation of an executory contract, said: "But surely, the wilful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract for which an action will lie for the recovery of all damage which the injured party has sustained."

In *Roehm* v. *Horst, supra,* the Supreme Court of the United States quoted with approval from an English decision the following: "On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; * * * It would seem on principle that the declaration of such intention by the promisor is not in itself and unless acted on by the

promisee a breach of the contract; and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract. Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen,* and holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such.  *  *  *

" 'But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract.'  *  *  *

" 'It seems to me that it is the better rule to hold that the party who has refused to perform his contract is liable at once to an action, and that whatever arises afterwards, or may arise in consequence of the time not having come or not having expired, should be considered in estimating the damages.' "

In the case of *Lake Shore, etc., R. Co.* v. *Richards, supra,* the subject under consideration was treated in an exhaustive opinion which reviews many of the decided cases in England and America. Lawyers' Reports Annotated gives extensive notes and cites numerous decisions bearing on the general subject.

In the course of the opinion the court said: "It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the

injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover, under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In the latter case the contract would be continued in force for that purpose. Where, however, the injured party elects to keep the contract in force for the purpose of recovering future profits, treating the contract as repudiated by the other party, in order to such recovery the plaintiff must allege and prove performance upon his part, or a legal excuse for nonperformance.''

In the same opinion the court also said: ''Without further quotation from cases, it seems clear, both upon principle and by authority, that where one party to an executory contract refuses to treat it as subsisting and binding upon him, or by his acts and conduct shows that he has renounced it and no longer considers himself bound by it, there is, in legal effect, a prevention of performance by the other party, and it can make no difference whether the contract had been partially performed or the time for performance has not yet arrived; nor is it important whether the renunciation be by declaration of the party that he will be no longer bound, or by acts and conduct which clearly evince that that determination has been reached and is being acted upon. * * *

"Upon the election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist, except for the purpose of maintaining the action for the recovery of damages."

In the case of *Anvil Mining Co.* v. *Humble, supra,* the court said: "Generally speaking, it is true that when a contract is not performed the party who is guilty of the first breach is the one upon whom rests all the liability for the nonperformance. A party who engages to do work has a right to proceed free from any let or hindrance of the other party, and if such other party interferes, hinders, and prevents the doing of the work to such an extent as to render its performance difficult and largely diminish the profits, the first may treat the contract as broken, and is not bound to proceed under the added burdens and increased expense. It may stop and sue for the damages which it has sustained by reason of the nonperformance which the other has caused."

In *Bond* v. *Carpenter, supra,* the court considered a case for damages for breach of an executory contract, involving the question of the plaintiff's readiness and willingness to perform after breach of the defendant, and said: "We think, if this was so, that the plaintiff was entitled to treat the contract as terminated by the defendant, and if it was wrongfully terminated that he was entitled to recover for the breach thereof, without showing that he continued to be ready and willing to perform his part after such termination. The defendant's request to the court to charge that it was incumbent on the plaintiff to show

that he was ready and willing 'at all times,' meaning as we understand that he was ready and willing continuously to the end of the year for which the contract was to run, was therefore rightly refused.''

The act of bringing an action, or taking legal steps to enforce a contract, amounts to an election by the party not to rescind it on account of anything known to him, and where a party institutes a suit for damages for the breach of an executory contract, his action in so doing is notice to the other party of his election to treat the contract as breached and at an end except for the purposes of ascertaining the damages occasioned by such breach. An election so made is conclusive against the party making it.  3 Elliott, Contracts §2026; *Cole* v. *Smith* (1899), 26 Colo. 506, 58 Pac. 1086, 1087; *Conrow* v. *Little* (1889), 115 N. Y. 387, 393, 22 N. E. 346, 5 L. R. A. 693; *Graves* v. *White* (1882), 87 N. Y. 463, 465.

It follows from the foregoing that the court did not err in its conclusions of law.

While we have not considered the case from the standpoint of the complaint, our examination of the briefs convinces us that the points relied on, if duly presented, fail to show reversible error under the law as above stated and the decisions cited.  This is also true for another reason as applied to two of the principal points in appellant's contention, viz.: (1) That appellee failed to notify appellant of his election to treat the contract as breached, and of his intention to seek to recover the damages caused by such breach; (2) that it does not appear either in the complaint or finding that appellee was ready, willing and able to pay the premium due under his original policy.

Assuming, without deciding, that the complaint and memoranda accompanying appellant's demurrer thereto are duly identified, we nevertheless

6. find an entire absence from such memoranda of any point challenging the sufficiency of the complaint for either of the foregoing reasons. By such failure appellant waived any error based thereon either as to the sufficiency of the complaint or in any of the subsequent proceedings of the trial. *Cincinnati, etc., R. Co.* v. *Gross* (1917), 186 Ind. 471, 114 N. E. 962; *Dunham* v. *Jones* (1915), 184 Ind. 46, 48, 110 N. E. 203; *Hedekin Land, etc., Co.* v. *Campbell* (1916), 184 Ind. 643, 112 N. E. 97.

The views of appellant seem to result from its failure to accept the law as announced in former decisions dealing with the same reinsurance contract, and questions analogous to most of those presented by this appeal, and also by a failure to distinguish between the law applicable to a suit for damages for the breach of an executory contract like the one at bar, and those which seek a recovery upon the contract, or some theory other than that of damages for a wrongful breach or repudiation of such contract.

The propositions above announced also show that the court did not err in sustaining the demurrer to the third paragraph of answer, which set up the details of the transactions and the reinsurance contract, and sought to show that appellee was bound by all of its provisions and that the liens charged against his policy and the increase in his premium were binding on him, and that his failure to pay such premium is a bar to his recovery in this suit. *Wagner* v. *Supreme Lodge, etc., supra; Willcuts* v. *Northwestern, etc., Ins. Co., supra.*

7. Several attempted assignments of error present no question, because, if proper at all, they deal with matter that should be assigned as grounds for a new trial.

There is an attempt in the motion for a new trial to challenge the sufficiency of the evidence and to assert that the decision is contrary to law.

8. A new trial was asked for the alleged reason that "the decision and judgment of the court are not sustained by sufficient evidence," and "because the decision and judgment of the court are contrary to law." Under our statute, as interpreted by numerous decisions, such assignments are unauthorized and cannot be recognized as grounds for a new trial. Bradford v. Wegg (1914), 56 Ind. App. 39, 102 N. E. 845, and cases cited; Hall v. McDonald (1908), 171 Ind. 9, 18, 85 N. E. 707.

Appellant stated as one of the grounds of its motion for a new trial that "the assessment of the amount of the recovery is erroneous in this, that said amount of recovery is too large."

Appellee contends that no question is presented as to the amount of the judgment, and that in any event it cannot be disturbed on appeal because there is evidence tending to sustain the amount of damages found to be due appellee.

9. The fourth subdivision of §585 Burns 1914, §559 R. S. 1881, authorizes the granting of a new trial for "excessive damages," but by numerous decisions it applies only in cases of torts. Lake Erie, etc., R. Co. v. Acres (1886), 108 Ind. 548, 550, 9 N. E. 453; McCormick, etc., Mach. Co. v. Gray (1888), 114 Ind. 340, 345, 16 N. E. 787; City of Indianapolis v. Woessner (1913), 54 Ind. App. 552, 557, 103

N. E. 368; *Conner v. Andrews Land, etc., Co.* (1904), 162 Ind. 338, 350, 70 N. E. 376.

In a certain sense a wrong is involved in every breach of a contract. But such wrong may be distinguished from the wrong which constitutes a tort.

In a suit for damages for the breach of a contract, the action arises out of the agreement of the parties, and is generally denominated an action *ex contractu,* whereas the right of action for a tort arises out of a breach of duty fixed by law, is independent of the will or agreement of the parties, and is usually denominated an action *ex delicto.* Pollock, Torts (10th ed.) 3; 28 Am. and Eng. Ency. Law 255; 38 Cyc 426-429; *Nevin v. Pullman Palace Car Co.* (1883), 106 Ill. 222, 46 Am. Rep. 688; *Galveston, etc., R. Co.* v. *Hennegan* (1903), 33 Tex. Civ. App. 319, 76 S. W. 452; *Central R., etc., Co.* v. *Roberts* (1893), 91 Ga. 513, 18 S. E. 315.

The case at bar is founded on the breach of a contract and not upon the violation of any duty imposed by law independent of the contractual relations of the parties. It is an action *ex contractu,* though not a suit upon the contract as in cases where a recovery is sought according to the terms of the contract.

The fifth subdivision of §585, *supra,* was properly followed by appellant in seeking a new trial on the ground that the amount of the recovery was erroneous, being too large. *American Quarries Co.* v. *Lay* (1906), 37 Ind. App. 386, 391, 73 N. E. 608; *Boggs* v. *Toney* (1912), 50 Ind. App. 289, 290, 98 N. E. 306, and cases cited; *Smith* v. *Barber* (1899), 153 Ind. 322, 332, 53 N. E. 1014; *Lake Erie, etc., R. Co.* v. *Acres, supra; Conner* v. *Andrews Land, etc., Co., supra; Brown* v. *Guyer* (1917), 64 Ind. App. 356, 115 N. E. 947, 948.

The finding of facts states in substance that appellee was damaged in the sum of $1,035.74 by the wrongful breach of his contract of insurance, or the lapsing of his policy for failure to acknowledge the validity of the liens charged against the same, and for failure to pay the unauthorized premium demanded of him as the only condition under which his insurance would be continued.

The facts bring the case within the rule applicable for the measure of damages in such cases.

There is evidence tending to sustain the finding and the amount is not shown to be so large as to warrant the reversal of the judgment on that account. *Blair* v. *Blair* (1892), 131 Ind. 194, 30 N. E. 1076; *Conner* v. *Andrews Land, etc., Co., supra; Mutual Reserve, etc., Assn.* v. *Ferrenbach* (1906), 144 Fed. 342, 75 C. C. A. 304, 309, 7 L. R. A. (N. S.) 1163; *Keyser* v. *Mutual Reserve, etc., Assn.* (1901), 70 N. Y. Supp. 32; *Ebert* v. *Mutual Reserve, etc., Assn.* (1900), 81 Minn. 116, 83 N. W. 506, 509, 510, 834, 84 N. W. 457; *Merrick* v. *Northwestern, etc., Ins. Co.* (1905), 124 Wis. 221, 102 N. W. 593, 595, 109 Am. St. 931.

Our examination of the whole record and the several cases dealing with the same reinsurance contract convinces us that the case was fairly tried and a correct result reached. Appellant was deprived of no substantial right, and no intervening error is pointed out which was harmful to appellant or would justify a reversal of the judgment. §§407, 700 Burns 1914, §§398, 658 R. S. 1881; *First Nat. Bank* v. *Ransford* (1914), 55 Ind. App. 663, 669, 104 N. E. 604, and cases cited.

Judgment affirmed.

Hottel, C. J., Ibach, P. J., Dausman, Caldwell and Batman, JJ., concur.

### On Petition for Rehearing.

Felt, J.—Appellant's learned counsel insist that the court erred in the original opinion in failing to consider the tenth ground of its motion for a new trial, which alleges that certain enumerated special findings "are not nor are either of them sustained by sufficient evidence."

Such assignment of causes for a new trial is unauthorized by our statute and has been held insufficient. *Scott* v. *Collier* (1906), 166 Ind. 644, 647, 648, 13. 78 N. E. 184; *Sievers* v. *Peters Box, etc., Co.* (1898), 151 Ind. 642, 656, 50 N. E. 877, 52 N. E. 399; *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 559, 97 N. E. 429; *Smith* v. *McDonald* (1912), 49 Ind. App. 464, 465, 97 N. E. 556; *Hamrick* v. *Hoover* (1908), 41 Ind. App. 411, 415, 84 N. E. 28; *Major* v. *Miller* (1905), 165 Ind. 275, 278, 75 N. E. 159.

On re-examination of the briefs we find that all material questions duly presented were considered and decided. We are content with the decision, and the petition for a rehearing is overruled.