DOBBS ET AL. *v.* ROYER, TRUSTEE IN BANKRUPTCY, ETC.

[No. 11,566. Filed January 17, 1924. Rehearing denied April 9, 1924.]

1.   NEW TRIAL.—*Motion for.—Assigning Causes for.—Special Finding.*—Assigning as causes for a new trial that certain enumerated findings of a special finding are not sustained by sufficient evidence presents no question. p. 385.

2.   APPEAL.—*Briefs.—Points and Authorities.—Good Faith Effort to Present Error.*—Where appellants have made a good faith effort to present error in accordance with the Rules of the Supreme Court as to "Points and Authorities," the court

will consider such questions as may have been presented, notwithstanding technical defects in their brief. p. 392.

3. FRAUDULENT CONVEYANCES.—*Fraudulent Intent.—Question of Fact.—Statute.*—Under the provision of §7483 Burns 1914, §4924 R. S. 1881, the question of fraudulent intent in making a conveyance is one of fact. p. 392.

4. FRAUDULENT CONVEYANCES. — *Fraudulent Intent. — How Proved.*—Fraudulent intent need not be proved by positive evidence; in fact, it is frequently proved by circumstantial and inferential evidence in direct opposition to the positive evidence. p. 392.

5. FRAUDULENT CONVEYANCES.—*Fraudulent Intent.—Effect.— Statutes.*—The statute (§§7479, 7480 Burns 1914, §§4920, 4921 R. S. 1881) expressly provides that all conveyances made with fraudulent intent to delay or defraud creditors, and all conveyances made in trust for the use of the person making the same, shall be void as against creditors. p. 393.

6. BANKRUPTCY.—*Preference of Creditor.—Beneficiary Joining in.—Voidable by Trustee.*—Where the grantee of a deed made for the purpose of defrauding creditors knowingly accepts the benefit thereof, it may be avoided by the trustee in bankruptcy. p. 393.

7. BANKRUPTCY.—*Fraudulent Conveyance.—Grantee Joining in. —Voidable by Trustee.*—A deed of conveyance made by an insolvent for the purpose of defrauding his creditors, when the grantee joined in the fraudulent intent, may be avoided by the trustee in bankruptcy. p. 393.

8. APPEAL.—*Review.—Reasons for New Trial.—"Points and Authorities" in Brief.*—A reason for a new trial assigned in the motion therefor presents no question for review on appeal where there is no reference thereto under "Points and Authorities" in appellant's brief. p. 394.

9. APPEAL.—*Review.—Conclusion of Law.—How Challenged.— Exception Necessary.*—In order to present any question on appeal as to the correctness of a conclusion of law, an exception must be taken thereto, and the incorrectness of the conclusion assigned as error; no question is presented by assigning it as one of the causes for a new trial. p. 394.

10. APPEAL.—*Review.—Conclusion of Law.—Not Within Issues. —Harmless Error.*—A conclusion of law that all deeds and contracts between the parties were fraudulent and void, which was erroneous as to one deed because it was not within the issues, was harmless error when the uncontradicted evidence showed that it was never delivered. p. 394.

11. APPEAL.—*Review.—Exclusion of Evidence.—Curing Error.* —Error in excluding competent evidence is cured by the subsequent admission of the excluded evidence. p. 395.

12. APPEAL.—*Review.—Venire De Novo.—When Properly Overruled.*—A motion for a *venire de novo* on the grounds of indefiniteness, uncertainty and ambiguity in the special finding was properly overruled when a conclusion of law could have been, and was, properly stated thereon, followed by a judgment in accordance therewith. p. 395.

From Owen Circuit Court; *Frank A. Symmes,* Special Judge.

Action by Samuel M. Royer, Trustee in Bankruptcy of David Walter Jones, Bankrupt, against Jones and Hattie B. Dobbs and husband to set aside a conveyance as fraudulent. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Joseph E. Henley* and *George W. Henley,* for appellants.

*Inman H. Fowler, Willis Hickam, Sr.,* and *Willis Hickam, Jr.,* for appellee.

NICHOLS, J.—Action by appellee to set aside a conveyance of certain real estate as fraudulent.

It is averred in the complaint, briefly, that appellant Jones was, on December 18, 1918, the owner of certain real estate of the value of $12,000 which, with $300 of personal property comprised the whole of his estate. That he owed divers persons a total of $9,157.39, and claimed to owe in addition thereto $1,500 to appellant Hattie B. Dobbs who was his adopted daughter and who with her husband, appellant James A. Dobbs, resided with him on the land involved. That for the unlawful purpose of hindering, postponing and delaying his creditors, and of preferring said Hattie in the payment of her claim of $1,500, and of preferring certain other creditors, said Jones, on said day, executed

his warranty deed to said Hattie thereby paying her said $1,500 in full, from the proceeds paid certain other creditors in full, including a mortgage indebtedness of $2,637.50, and appropriated the remaining portion to his own use. He thereby exhausted the whole of the consideration for said real estate, was insolvent and made no payment on certain of his debts above included, aggregating $6,219.89. This was done by connivance and collusion between said Jones and said Dobbs and Dobbs. Jones reserved the right to live on the land, and appellants Dobbs and Dobbs agreed to furnish him a home, to board him, to do his washing, to pay doctor bills and nurse and medical bills, and $25 monthly. The deed was accepted and placed of record, and ever since, said Hattie has claimed the ownership of said land. Within four months from the date of said deed, said Jones was adjudged a bankrupt, and appellee was thereafter appointed trustee in bankruptcy and duly qualified as such. After averments as to waste, there was a prayer for a decree that the pretended deed was fraudulent and void as to creditors, for an order for the sale of the land, and an order restraining the waste. The restraining order, though granted, is not here involved. There was an answer in general denial, a trial with special findings of fact and conclusions of law, and judgment thereon in favor of appellee, from which, after motions for a *venire de novo* and for a new trial were overruled, this appeal. The errors assigned are the overruling of said respective motions. Of the reasons for a new trial, those numbered respectively 2 and 3, and 7 to 14 inclusive, each challenge a certain definite part of the finding of facts as not being sustained by sufficient evidence. That such an assignment presents no question has been numerously decided both by this court and by the Supreme Court. *Federal Life Ins. Co.* v. *Maxam* (1917), 70 Ind. App. 266, 289, 117 N. E.

801, 118 N. E. 839; *Beard* v. *Payne* (1917), 64 Ind. App. 324, 329, 115 N. E. 782.; *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 97 N. E. 429; *Scott* v. *Collier* (1906), 166 Ind. 644, 78 N. E. 184.

The first reason assigns that the special findings of the court are not sustained by sufficient evidence, and the sixth that they are contrary to law.

In the Scott case cited last above, the first and second reasons for a new trial were the same as the first and sixth in the instant case, and the court says of them that "the first and second assignments cover the entire ground, and fully serve to challenge the sufficiency of the evidence to support the special finding of the court as to any and all of the material facts therein embraced, and to raise the question in regard to the finding being, under the evidence, contrary to law." The evidence in this case is voluminous, covering approximately 750 pages of the record. After having read the statement thereof as set out in both appellants' and appellee's briefs, we are fully satisfied that it sustains all of the material facts found by the court, which facts, so far as here involved, are as follows:

About the year 1905, appellant Jones, then a married man, purchased and moved on the 242 acres of land involved, which constituted a valuable grain and stock farm worth on December 18, 1918, $14,520, on which there was a mortgage of $2,500 with $137.50 interest due thereon; that said Jones resided upon said farm and conducted it, to all appearances, in a prosperous and successful manner. That said Hattie, who is twenty-nine years of age, before she was one year old was duly adopted by said Jones and his wife who had no children of their own, and thereafter she resided with the said Jones and wife as their daughter; that Mrs. Jones died in the year 1914; that in March, 1912, said Hattie was married to appellant James A. Dobbs, who

was then and ever since, until the last year, has been a saloon and poolroom keeper, restaurant owner, or drugstore owner in Jasonville or in Terre Haute; that after their marriage, they, a great part of the time, made their home with said Jones, the said Hattie keeping house for him. They were at all times and still are on confidential and intimate terms personally, and each had the full friendship and confidence of the other. That about 1912, Jones moved to Spencer, Indiana, and engaged in the feed, ice and coal business, in which he lost heavily, and on May 25, 1917, he had no other property subject to execution except said farm, then worth $14,520, and personal property thereon worth $300, in all $14,820, and he then owed debts which, including $3,898.14 to the Exchange Bank of Spencer, Indiana, $1,590 to the Spencer National Bank, $500 to one Lucy Hill and $1,909 claimed to be due Hattie, amounted to $11,859.14. That during the period from May 25, 1917, to December 18, 1918, Jones was making and renewing notes as they severally became due to said banks every three months and obtaining credit from time to time on the faith of said banks in his ownership of said farm and the personal property kept on it; that he and said Hattie and James A. Dobbs all treated said property, so far as the creditors of said Jones had any knowledge, as the property of said Jones. That during the period between said May 25, 1917, and December 18, 1918, while said James A. Dobbs was engaged in his said business, he or his friends were often arrested and imprisoned on criminal charges in the state courts and in the federal court at Indianapolis, and that, for the purpose of enabling said Jones to sign for the release of said Dobbs and his friends and associates when so imprisoned at different times, said Jones, James A. Dobbs and Hattie B. Dobbs, at different times, represented that said Jones was the sole owner of said 242

acres of land, that it was worth more than $12,000 above all encumbrances and exemptions and that said Jones was worth more than $15,000 above all exemptions and encumbrances. Said Jones did, during said period, procure the acceptance of six recognizance bonds in the Greene Circuit Court for the personal friends of said James A. and Hattie B. Dobbs, and one bond in the federal court at Indianapolis, Indiana, for the release of said James A., who was then held in custody upon a criminal charge pending in said court, on the faith and belief that he was still the owner of the whole of said lands subject only to the mortgage. That on May 25, 1917, after borrowing from said banks and making notes to the amount of over $5,000 to said banks, and after renewing them every three months for several years, and while indebted to all of said parties as hereinabove found, said Jones signed a warranty deed for one-third of said farm to said Hattie, upon an expressed consideration of $4,000, with a contemporaneous written contract by the parties providing that said deed should not be recorded or delivered to the grantee, but was to be placed in an envelope and left with the cashier of said Exchange Bank, and that said Hattie should pay $1,000 in cash and as much as $500 each succeeding year, without interest, until all the consideration was paid, the deed not to be delivered until all payments were made through said bank, after which the deed was to be delivered to said Hattie by the bank, but if said payments were not so made, the deed was to be returned to said Jones, the deed not to be recorded until after all payments should be made through said Exchange Bank and the deed delivered; that said deed and contract were placed in an envelope and delivered to the cashier of said bank, who received it without reading the same or receiving knowledge of the contents; that neither said Exchange Bank nor said Spencer Na-

tional Bank ever received any knowledge of the contents of the envelope containing said deed and contract until after December 18, 1918, but that said banks, each being kept in ignorance of said deed and contract and believing that said Jones was in fact the owner of said lands, continued to accept renewals of said notes and extend credit to said Jones therefor, until December 18, 1918, on which date, and while said deed for one-third of said farm was still undelivered in said Exchange Bank, by deed and contract, said Jones then sold the remaining two-thirds of said farm to said Hattie, with all personal property thereon, amounting to $300 in value, for the consideration as expressed in deed of $5,000, and executed a warranty deed for the whole of said lands to said Hattie, and the same was on said day recorded.    That by the terms of said contract, made contemporaneously with said deed and as part of the terms of said sale, it was further agreed between said Jones and appellants Dobbs and Dobbs, as a part of the consideration, that the said Hattie should not sell said land during the lifetime of said Jones, but that she and her husband should furnish to Jones a home with them thereon, and that they should board, nurse and care for him, pay his doctor bills and pay him $25 in cash every month thereafter during his lifetime; that the life expectancy of said Jones at said time was eleven years and eight months; that it was worth $1 per day to board him and furnish him a home upon said land and that his board and maintenance and said $25 per month during his said life expectancy, aggregates a further consideration for said lands in the sum of $7,200 which amount of said consideration, said Jones reserved to himself by the terms of said sale and deed.    Said Jones, after conveying said land to said Hattie, December 18, 1918, and after preferring, allowing and paying said two claims of said Hattie in full as part payment

of the consideration in the amount of $1,909, and after preferring and paying certain other creditors, and appropriating to himself about $900, and reserving his life maintenance aforesaid, was left and is left wholly insolvent and without any property whatever subject to execution, or from which said banks or said Hill might collect their debts or any part thereof. That upon the execution of said deed on December 18, 1918, said Hattie paid $2,637.50 in satisfaction of the mortgage, which was a first lien on said land. The court finds that the deed and contract of May 25, 1917, and the deed and contract of December 18, 1918, were each executed, and all payments which have been made thereon have been made, in pursuance of a fraudulent scheme and conspiracy, except the payment of said mortgage, and that, by such payment, no creditor was defrauded or damaged, but that said payment prevented a possible foreclosure; that all acts performed and all payments made by said Dobbs and Dobbs, or either of them, in carrying out and making said contract and deed effectual, have been paid and performed for said fraudulent purposes and with notice of the insolvency of said Jones and his said fraudulent purposes, and that said creditors not paid were thereby hindered, delayed and defrauded, except as to the payment of said mortgage indebtedness; that after the execution of said deed and contract on December 18, 1908, said Jones and said Hattie B. and James A. Dobbs continued to remain in the home on said farm, said Jones receiving his board and maintenance and said sum of $25 per month until March 20, 1920, when the residence upon said farm was destroyed by fire, after which the Dobbses and said Jones moved to Gosport, Indiana, where they have ever since resided in the same home, the Dobbses furnishing said Jones his personal maintenance, including his board and room, and paying him $25 per month, as stipu-

lated for in said contract and deed of date of December 18, 1918.

Appellee contends that appellants have failed to present any question for our consideration for the reason that each of their points and authorities is merely

2. an abstract proposition of law. While there is much merit in appellee's contention, yet believing, as we do, that appellants have in good faith attempted to present errors relied upon, we are loath not to consider them, in so far as they can be determined, because of technical defects, and we shall therefore consider such substantial questions as we are able to discern.

Appellants' first proposition is that a conveyance cannot be avoided, when made for a valuable consideration, because of the fraud of the grantor in which

3, 4. the grantee did not participate. But appellants correctly state as a second proposition that the question of fraudulent intent under the statute (§7483 Burns 1914, §4924 R. S. 1881) shall be deemed a question of fact. The trial court, in this case, has found from the evidence, that the grantee joined with the grantor in his fraudulent purpose and we hold that there was ample evidence to sustain such a finding. Fraudulent intent need not be proved by positive evidence. In fact it is sometimes most difficult so to prove it. Appellant Hattie testified affirmatively that she had no knowledge of her adoptive father's unpaid indebtedness here involved, or of his fraudulent intent, but the court from the facts and circumstances surrounding the transaction has found otherwise and such evidence, though it be circumstantial, is sufficient to sustain the court's conclusions. That fraudulent intent may be so established, see *Farmer* v. *Calvert* (1873), 44 Ind. 209; *Hoffman* v. *Henderson* (1896), 145 Ind. 613; *Milburn*

v. *Phillips* (1894), 136 Ind. 680; Bump, Fraud (3d ed.) 5759.

The Milburn case cited above mentions numerous badges of fraudulent intent and is especially valuable in the consideration of the questions here involved.

Having determined that there was a fraudulent intent on the part of both the grantor and the grantee in the transaction here involved, the statute leaves nothing further for us to decide. Section 7479 Burns 1914, §4920 R. S. 1881, provides: "All conveyances and assignments, in writing or otherwise, of any estate in lands, or of goods, or things in action, every charge upon lands, goods or things in action, and all bonds, contracts, evidence of debt, judgments, decrees, made or suffered with intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be void as to the person sought to be defrauded." Section 7480 Burns 1914, §4921 R. S. 1881, provides: "All deeds of gift, conveyances, transfers or assignments, verbal or written, of goods or things in action, made in trust for the use of the person making the same, shall be void as against creditors, existing or subsequent, of such person."

Section 60, clause A of the U. S. Bankruptcy Act (§9644 U. S. Comp. Stat. 1916), provides: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than

any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required." And clause B of the same section provides: "If a bankrupt shall have given a preference, and the person receiving it, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any State Court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." Under these statutes, it is clear that the deed and contemporaneous contract of December 18, 1918, cannot stand.

No question is presented in the motion for a new trial as to the deed of May 26, 1917. It is true that one of the reasons for a new trial was that the special findings are contrary to law, but nothing is presented on this question under points and authorities.

8.

Appellants attempt to challenge conclusion of law No. 1 which states that appellee is entitled to judgment declaring all deeds and contracts between appellants covering the real estate involved fraudulent and void, but this attempted challenge is made first and only under the motion for a new trial and without even an exception to the conclusion. We hardly need to say that nothing is presented. We may state, however, that while it is true that no specific averment is made in the complaint to the effect that the deed of March 26, 1917, was fraudulent and void, it is averred therein that Jones was the owner of the whole of the

9, 10.

real estate on December 18, 1918, which could not have been had the former deed been effective. Evidence was heard, which was tendered by both the appellants and appellee, concerning the transaction of May 26, 1917, out of which the first deed grew, without objection from any one, and Jones himself testified that it was the understanding that the first deed was to be destroyed. Further, it appears by the undisputed evidence that such deed was never delivered. It follows that even if the finding and conclusion that the first deed was fraudulent and void was error because not within the issues, such error, would be harmless.

No question is presented with reference to error in the exclusion of certain evidence tendered by appellants, but if such exclusion of evidence had been 11. error, such error was cured by the subsequent admission of the excluded evidence.

The only question attempted to be presented by the *venire de novo* is that the special findings of fact, the substance of which is set out above, are so uncertain, indefinite and ambiguous that "no judg- 12. ment or conclusion of law could be rendered thereon." We do not agree with this contention and we, therefore, hold that the motion for a *venire de novo* was properly overruled.

We find no reversible error.     Judgment affirmed.