THE CENTRAL RAILROAD & BANKING CO. v. ROBERTS.

1. A juror is not incompetent to try the case because his step-daughter married the brother of the plaintiff. The marriage established no relationship or affinity between the juror and the plaintiff.

2. A railway agent, who sells a Sunday excursion ticket consisting of two parts, one of which signifies that it was to be used in going and the other in returning, but neither of them indicating any particular train, is a proper person of whom to inquire, at the time the ticket is purchased, as to whether it would afford the right to return on a fast train, called the "Cannon Ball," of the same day or night. His reply in the affirmative, together with the possession of the return part of the ticket and its production to the con-

ductor of the fast train, would entitle the passenger to return on that train and be put off at the proper station, unless he knew or had sufficient reason to believe that the agent was misinforming him, or that there was some rule or order of the company either denying to the agent authority to answer such a question or forbidding the recognition of such a ticket by the conductor of the fast train.

3. If the passenger was not told by the agent that he could return on the fast train, and if he knew that the fast train did not usually stop at the station, he would have no absolute right to return on that train, provided there was another on which he could return before his ticket expired.

4. There being no conditions on the face of the ticket, and no controversy as to the right of the passenger to return on some train, it was error to charge the jury that one who buys a return ticket has a right to return if he performs all the conditions of the ticket, and that if the agent told the passenger that he could go and return on this ticket the passenger had a right to presume that he could do so, and if in his effort to do so he was put off at any other station he would be entitled to damages. The pressure of the case was upon the right of the passenger to return on the fast train, and the charge, though correct as abstract law, was not pertinent to that question and might have misled the jury.

5. In order for a passenger to recover for wrongful expulsion from a train, it is not necessary that the conductor should have put his hands on him.

6. A passenger who brings an action of tort for wrongful expulsion from a train, is not restricted to a recovery as for breach of contract but may recover for his injury as a tort. The amount of general damage (no special damage being proved) is matter for the enlightened conscience of an impartial jury.

April 10, 1893. Argued at the last term.

Before Judge GUERRY. Quitman superior court. March term, 1892.

Roberts sued the railroad company for wrongful expulsion from its passenger-train. He recovered a verdict for $150, and the defendant's motion for a new trial was overruled. According to the evidence for the plaintiff, he bought of the defendant's agent a Sunday excursion ticket from Hatcher's station to Eufaula, with a return coupon attached, stating to the agent that he wished to return that night by a particular train known as the Cannon Ball, and that if he could not return on

that train he did not want the ticket; whereupon the agent told him that the train would stop for him to get off at Hatcher's station. He did not tell the conductor what the agent said. He boarded that train to return to Hatcher's station, but on presenting his return ticket to the conductor, that officer refused to take it for his passage, and ordered him, with others similarly situated, in the presence of the other passengers, to leave the train at a point nine or ten miles from that station, and plaintiff was compelled to walk the rest of the distance through unpleasant weather. The conductor's manner was rough and threatening. The plaintiff's testimony was also to the effect that this train had, both before and since the time in question, been stopped at Hatcher's station to put off passengers. The testimony for the defendant was in direct conflict with the foregoing, and tended to show that the plaintiff knew before he started to Eufaula that the Cannon Ball train would not stop at Hatcher's station; that he talked with the defendant's agent and telegraph operator on the subject, and was distinctly informed of the rule as to that train, viz. that it would not stop there without a special order from the train-master; and that after the plaintiff and his companions entered the coach at Eufaula, the conductor announced to them and the other passengers, before the train started, that it would not stop between Eufaula and Cuthbert, Hatcher's station being an intermediate point. The conductor denied that his manner was rough, etc. He offered the plaintiff the alternative of paying $1 and going on to Cuthbert. The plaintiff denied hearing the conductor's announcement.

The motion for a new trial alleges that the verdict is contrary to law and evidence, and is excessive; and sets forth the following grounds:

The defendant objected to one Craft as a juror, and asked that he be set aside for cause, on the ground of

his relationship to the plaintiff, his step-daughter having been married to a brother of the plaintiff. This was overruled.

Errors in the court's charge to the jury:

"You will determine from the evidence whether he bought the ticket or not, and paid for it.

"You will determine whether or not that ticket was good on that train; whether the agent of the railroad told him whether or not he could come back on that night train; whether he could come back, or whether the conductor ordered him from the train.

"It was not necessary that the conductor should put his hands on him to make him leave the train; you will determine whether he told him he must leave, or whether he gave him the alternative of carrying him to Cuthbert by paying so much fare.

"I charge you that when a party buys a ticket in this State over a railroad to go to a particular point and return, he has the right to return on the railroad if he perform all the conditions of the ticket.

"I charge you further, if the agent of the railroad told him that he could go to Eufaula and back upon this ticket, he had the right to presume that he could do so; and if in his effort to do so he was put off at any other station than Hatcher's, he would be entitled to damages.

"The question of damages is for you to determine; if any at all, how much; that is a matter left to the enlightened conscience of an intelligent jury as to what is reasonable, right and proper damages, such as conscientious men would believe the plaintiff should recover, if you believe he should recover at all."

R. F. Lyon and John R. Cooper, for plaintiff in error.
G. A. Whitaker, by brief, contra.

Bleckley, Chief Justice.

1. Marriage will relate the husband by affinity to the wife's blood relations, but will not relate the husband's

brother to any of her relations. The husband of the juror's step-daughter was not related to the juror, but only to the juror's wife. The husband's brother, the plaintiff, was further off still; he was not related even to the juror's wife.

> The groom and bride each comes within
> The circle of the other's kin;
> But kin and kin are still no more
> Related than they were before.

2. The agent who sold the Sunday excursion ticket represented the company in making the sale, and the information which he gave as to whether the ticket would afford a right to return on a particular train could be relied on unless it was known to be incorrect, or unless some known rule or order of the company made the agent incompetent to give such information or forbade the recognition of such a ticket by the conductor of the designated train, or of trains belonging to that class. The ticket being silent on its face as to trains, and one of the parts of the ticket being for a return passage, of course it would be proper for the company to authorize some one to answer questions when the ticket was sold, so that the buyer might know how to use it; and no other person would seem to be so proper for this purpose as the agent selling it.

3. If, when he bought the ticket, the passenger was not told that he could return on the fast train, and if he knew that train did not usually stop at the station, and with this knowledge bought the ticket, he certainly would have no absolute right to return on that train, provided there was some other on which he could return before his ticket expired. Although tickets sold may not expressly include or exclude any of the trains, yet if it be known to the buyer at the time of his purchase that such tickets are not recognized on a particular class of trains but only on trains of a different class, he should be understood as consenting to use his particular

ticket as such tickets were used by others and as the company expected tickets of that class to be used. Such would be the fair meaning of the contract really made between the parties by the purchase and sale of the ticket.

4. There was no dispute that the passenger had a right both to go and return on his ticket. The whole pressure of the case was upon the question whether he had a right to return on the fast train, which did not usually stop at the station at which the ticket was sold, or whether his right was limited to return on some other train which did stop there. The ticket itself had no conditions on its face touching the matter. This being so, it was obviously misleading or calculated to mislead for the court to charge the jury that one who buys a return ticket has a right to return if he performs all the conditions of the ticket, and that if the agent told the passenger that he could go and return on his ticket the passenger had a right to presume that he could do so, and if, in his effort to do so, he was put off at any other station, he would be entitled to damages. It is to be observed that this charge says in general terms that if the agent told the passenger that he could go and return on his ticket the passenger had a right to presume that he could do so. This is certainly true, and what immediately follows, that is, if in his effort to do so he was put off at any other station he would be entitled to damages, would also be true if the agent had told him not merely that he could return on his ticket but that he could return on it upon the fast train. The court did not make this a condition of his right to recover, but left it out entirely. As abstract law the charge was correct, but it was not applicable to the only real question in the case about which the parties disputed. There was a conflict of evidence as to whether the agent told the passenger he could return on the fast train. The

charge as given would authorize the jury to find against the company without settling that conflict. This error vitiated the whole trial.

5. The contention that in order for the passenger to recover for wrongful expulsion it was necessary that the conductor should have put his hands on him, is manifectly unsound. A conductor may expel a passenger as effectually by ordering him off as by pushing him off. He is a man in authority and may exert that authority by words as well as by using physical force.

6. In such an action as the present, where it is well founded, a recovery may be had for the injury as a tort, -as a breach of a public duty by a common carrier—a duty imposed by law, though involving in this breach a breach of contract also. The passenger could elect to sue only for the breach of contract, and, did he so elect, his recovery would be limited to nominal damages if he failed to prove any special damage. But this action being for a tort and no special damage being proved, proof of the tort and the circumstances attending it would entitle the plaintiff to recover such amount as the enlightened conscience of an impartial jury would sanction as fit for the plaintiff to have and the defendant to pay. There is no other measure of damages for such a case.        *Judgment reversed.*