### BALDWIN *v.* THE STATE.

1. In a case of assault with intent to murder, the intention of the accused is always a matter for determination by the jury; and where the evidence is such as to authorize a finding that the accused, while not entirely justifiable, was not guilty as charged in the indictment, it is not error for the judge to give in charge to the jury the law as to the statutory offense of shooting at another.

2. A juror is not disqualified by reason of the fact that his wife is a second cousin of the wife of one of the parties at interest.

3. On the trial of an indictment for assault with intent to murder, where it appears that at a certain stage of the difficulty between the accused and the prosecutor the accused lowered his gun from his shoulder and rested it on his hip, it is not permissible, in order to prove that he intended to shoot from the latter position, to show by a witness that "a lot of good shots shoot their guns from their hips. I shoot doves and quail myself, and know a lot of good shots shoot that way." The admission of such evidence is error requiring the grant of a new trial.

4. In such a case it is error to unduly stress the contentions of the State, at the same time ignoring the contentions of the accused.

Argued April 23, — Decided May 10, 1904.

Indictment for assault with intent to murder. Before Judge Sheffield. Randolph superior court. February 22, 1904.

*A. M. Raines* and *M. J. Yeomans*, by *Rosser & Brandon*, for plaintiff in error.

*J. A. Laing, solicitor-general*, by *R. R. Arnold*, contra.

CANDLER, J. The accused was tried under an indictment for assault with intent to murder, and was found guilty of shooting at another. In the bill of exceptions he complains of the overruling of his motion for a new trial. There was some conflict in the evidence as to the events immediately preceding the occurrence under investigation. It seems, however, that a state of bad feeling existed between the accused, Baldwin, and the prosecutor, Blackburn, and that a difficulty between them was not unexpected. About all that is certain from the evidence is that on the day when the difficulty took place Blackburn was standing at a designated point on the public square in the town of Cuthbert, when Baldwin drove by him in a buggy carrying a double-barreled shotgun loaded with buckshot; that after passing Blackburn, Baldwin drove a short distance and got out of his buggy; and that almost immediately both Baldwin and Blackburn began firing at each other. The witnesses for the State make it appear that Baldwin was the aggressor and fired first; while those for the accused testified that the accused endeavored to avoid a difficulty, that he was pursued by Blackburn, and that he fired only after Blackburn had opened fire on him.

1. It is contended by counsel for the accused that the court erred in giving to the jury a charge which would authorize them to find a verdict of guilty of shooting at another, as under no view

of the evidence was such a finding warranted. This contention is without merit. The several eye-witnesses to the affair who were introduced gave accounts which varied in many essential details. In a case of this sort the intent of the accused is always of primary importance and is a question for the jury under the evidence. The jury in the present case had evidence before them upon which to base a finding that the accused, while not wholly justifiable in firing at the prosecutor, was not guilty to the full extent charged in the indictment. The charges on this subject were therefore not erroneous.

2. The motion for a new trial also seeks to set up the disqualification of one of the jurors before whom the case was tried, on the ground of relationship to the prosecutor. It appears, however, from the affidavits in support of this ground that the relationship relied on consisted in the fact that the prosecutor and the juror had married second cousins. Each would have been disqualified to act as juror in a case in which the other's wife was interested, but as to each other there was no disqualification whatever. An easy way out of difficulties of this sort may be had by reference to the rule laid down in rhyme by Mr. Chief Justice Bleckley in *Central R. Co.* v. *Roberts*, 91 *Ga.* 517:

> "The groom and bride each comes within
> The circle of the other's kin;
> But kin and kin are still no more
> Related than they were before."

It is apparent, therefore, that in the present case there was no disqualification, and that the ground of the motion referred to presented no reason for the grant of a new trial.

3. A witness for the accused who saw the shooting testified that before Baldwin fired at Blackburn he raised the gun to his shoulder and then lowered it to his hip, afterwards raising it to his shoulder again when he shot. On cross-examination he was allowed, over the objection of counsel for the accused, to testify: "A lot of good shots shoot their guns from their hips. I shoot doves and quail myself, and know a lot of good shots shoot that way." There can be no doubt that the admission of this evidence was error. The defense of the accused was that he fired at the prosecutor in self-defense, or under the fears of a reasonable man that his life was in danger. The testimony of the witness on direct examination tended to show that he was acting in self-de-

fense; that after raising his gun the first time he came to the con-
clusion that it would not be necessary for him to shoot, and low-
ered it to his hip.    It was, of course, permissible for the State to
rebut this evidence by showing that the accused was in the habit
of firing from the hip; but clearly this could not be done by
showing that "a lot of good shots" are in the habit of firing in
that manner.

4. The following charge of the court is assigned as error, on
the ground that it was unfair and argumentative: "For instance,
you can see if Baldwin was mad with Blackburn; for if he was
not, he would not be likely to shoot at him.    See if Dr. Baldwin
had a gun.    Was he carrying it in his buggy; if so, what for?
Was he accustomed to carrying it?    What effect does that have
on your minds in settling the matter?    If he had a gun, then,
and it was not his custom to carry it about with him in his
buggy, why did he have it that particular day?    Was it loaded?
And if it was loaded, what was it loaded with?    Was it loaded
with buckshot, or with something else?    If it was loaded with
buckshot, why and what for?    Was it to shoot some person, or
to shoot something else.    Was he driving through the square,
and did he come in contact with Blackburn.    Did he see him?
Did he have any business up there on the square.    Was it busi-
ness that caused him to stop upon the square?    What did he
stop for?    Did he get out of his huggy?    If so, what for?    Did
he turn towards where Blackburn was?    If so, why?    Did he
take his gun from the buggy when he got out?    If so, what for?
Did he raise it; and if so, what for?    And in what direction
was it pointed?    Did he lower it after raising it, and then raise
it again?    If so, for what purpose?    And did it fire off when he
raised it the second time, if he raised it the second time?    If so,
in what direction?    Was the firing off of the gun accidental or
intentional?"    While we are satisfied that the able and learned
trial judge had no intention to do other than the most exact and
impartial justice between the State and the accused, we are con-
strained to hold that the charge quoted is fairly open to the
criticism made against it.    As before stated, Baldwin's defense
was that he shot at the prosecutor in self-defense, and there was
evidence before the jury in support of that theory.    It could not,
therefore, have been otherwise than extremely prejudicial to the

accused to instruct the jury that if he was not mad with Blackburn at the time of the difficulty, he would not have been likely to shoot at him.    The charge also goes into minute detail as to conduct of the accused which he did not deny, and its tendency was to lead the jury to believe that if these admitted details of the difficulty were true the accused was guilty as charged.   It is also noteworthy that nowhere in his charge did the judge go with like minuteness into the conduct of the prosecutor as contended by the accused..    The result was, that, as to the circumstances immediately connected with the difficulty, the contentions of the State were given undue stress, while those of the accused were almost entirely ignored.    The decision on this point is clearly governed by the ruling of this court in *Brantley* v. *State*, 115 *Ga.* 230 (3), where it was held error for the court in a criminal case to unduly impress upon the jury circumstances tending to implicate the accused, with no corresponding statement of the points insisted upon in his defense.    See also *Thomas* v. *State*, 95 *Ga.* 485 ; *Moody* v. *State*, 114 *Ga.* 449.   On account of this error, and of the erroneous admission of evidence before referred to, the case should go back for another trial.

*Judgment reversed.    All the Justices concur.*