45873. STATE HIGHWAY DEPARTMENT v. PRICE.

ARGUED JANUARY 12, 1971—DECIDED APRIL 16, 1971.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, Larry H. Evans, Assistant Attorneys General, F. H. Boney, Deputy Assistant Attorney General,* for appellant.

*Cook & Palmour, A. Cecil Palmour,* for appellee.

Hall, Presiding Judge. 1. For whatever reasons, the State chose to specifically condemn and offered to pay for the condemnee's right of access to the highway. The Supreme Court has held that "to go upon and across the public road is one of the fundamental rights which belong to abutting landowners," a right which enactment of a statute providing for limited access highways does not divest and for which just and adequate compensation must be paid. *State Hwy. Dept. v. Lumpkin,* 222 Ga. 727, 729 (152 SE2d 557). Although the State had also specifically condemned access rights in that case, the court did not rest its decision solely on the condemnor's inability to repudiate its own allegations, but instead declared access rights to a highway to be a fundamental property right for which compensation must be paid. Since this is a decision of our highest court, our individual judgment on this question is now moot. The trial judge here instructed the jury that they should set a value on these rights as part of the total compensation for property taken.

The State cites two cases decided in this court subsequent to *Lumpkin* in which we held that the right of access to a limited-access highway was not a species of separate property, but a right appurtenant to the land not taken and only an element of consequential damages to the remainder. *Klumock v. State Hwy. Dept.,* 119 Ga. App. 505 (167 SE2d 722); *Potts v. State Hwy. Dept.,* 120 Ga. App. 164 (169 SE2d 678). In those cases, however, there was no condemnation of access to the highway, and the issue in *Klumock* was whether the trial judge, in the absence of a request, erred in failing to instruct that loss of access rights to the highway was a specific element of consequential damages. These cases do *not* stand for the proposition that where access easements are specifically condemned, they are only compensable as an element of consequential damages.

The court also instructed the jury that it could consider, as part of the consequential damages, the condemnee's *loss of access to the 29 landlocked acres.* We also view this as a completely different loss or element from access to the new highway. Unfortunately, the trial judge used some *Klumock* language in charging on the consequential damages to the 29 acres. Nevertheless, the charge in its entirety clearly indicates the condemnee has suffered two

distinct losses: He can't get on or across the new highway and he can't get to his top 29 acres *in any way.*

The charge therefore did not authorize a double award for the same thing. It properly, classified and authorized consideration of two separate elements of loss. The court did not err.

2. This case illustrates forcefully: the pitfalls of semantics; the dilemma trial judges face in preparing instructions, confronted with both conflicting requests to charge and numerous appellate court decisions; and finally, the near futility of appellate review based on the premise that the jury heard, understood, digested and correctly applied 17 transcript pages of instructions, which, because they might have contained some error, led the jury to reach a completely erroneous verdict.

The trial judge here appeared to do his best to sort out the various possible elements of compensation under the pleadings and evidence, and to charge the jury in accordance with the latest appellate decisions on the subject. Under the circumstances, he did remarkably well.

A complaint not uncommon among jurors is that they just do not understand the judge's charge to the jury—it is too long, disjointed, repetitious and replete with technical terms. A famous playwright once said that judges' instructions are "grand conglomerations of garbled verbiage and verbal garbage." These criticisms are not the fault of either the trial judges or the appellate courts. The trial judge must act at his peril in choosing instructions. He has neither the time nor adequate guidelines to prepare these instructions. His guidelines are often verbose, argumentative appellate opinions that are sometimes conflicting. These opinions were not written for the purpose of setting out a good instruction. They were written to decide the law in a particular case. We know that even the approval of certain instructions by an appellate court is not the equivalent of saying the language in the approved instruction is the best language to be used. The trial judge is also faced with many requests for instructions by opposing counsel. These are usually biased in favor of one side or the other and serve only to further confuse the jury. Again he acts at his peril in failing to grant one or more of these requests because of the danger of reversal in the appellate courts.

Over thirty of our States, including our neighbor Florida, have taken steps to meet this problem by the adoption of "Pattern Jury Instructions." These are model, standardized instructions which explain the law in clear, concise, impartial and accurate terms which are intelligible to the average layman. The task is not an easy one. A drafting committee must start from scratch and re-write the whole field of court instructions. In Florida it was a five-year project of the bench and bar. These pattern instructions give the lawyers and trial judges a starting point so that little additional research is needed. They are more impartial because they were prepared in the objective atmosphere of the drafting committee rather than in the heat of the lawsuit. They certainly reduce the grounds for appeal on technical errors. They are more intelligible since they were prepared to be understood by laymen. They are concise and brief in the belief that it is better for the jury to understand the basic principles than for it to be confused by excess verbiage and slanted charges. See Beasley, "Pattern Charges," 27 Alabama Lawyer 181 (1966); Snyder, "Jury Instructions Revolutionized," 42 Chicago Bar Record, 105 (1960); Yerkes, "Standardized Instructions in California," 5 St. Louis University Law Journal, 347 (1959); Snyder, "Pattern Jury Instructions," 20 Journal of the Missouri Bar 53 (1966); Winslow, "The Instruction Ritual," 13 Hastings Law Jorunal, 456 (1962).

*Judgment affirmed. Eberhardt, J., concurs. Whitman, J., concurs in the judgment.*