HURLEY, Judge.
This appeal concerns the constitutionality of section 777.03, Florida Statutes (1981), a law which permits certain family members to aid a related fugitive without fear of criminal prosecution. The trial court invalidated the statute, finding it void for vagueness [1] and violative of the Equal Protection Clause.[2] We reverse.
Section 777.03, Florida Statutes (1981), states in pertinent part:
Whoever, not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, maintains or assists the principal or accessory before the fact, or gives the offender any other aid, knowing that he had committed a felony or been accessory thereto before the fact, with intent that he shall avoid or escape detection, arrest, trial or punishment, shall be deemed an accessory after the fact, and shall be guilty of a felony of the third degree .... [Emphasis added.]
Instead of using their common, ordinary meanings, i.e., blood for consanguinity and marriage for affinity, the trial court turned to Black’s Law Dictionary and found that affinity has a secondary, more abstruse definition.[3] Then, the court applied this tech *64 nical definition and found that it produced “obvious absurdities.” For example, the court noted that “the sister-in-law of a man’s wife would receive immunity from prosecution ... but a blood cousin, who may well have been an inseparable companion since birth, would not. An aunt or uncle who lived within one’s household for many years would not receive the protection of this statute, but other rather distant relatives by affinity would receive its blessings.” Thus, the court concluded that the statute was so vague that it produced irrational results.
We begin our analysis by noting two fundamental principles of statutory construction. First, “this Court has the duty if reasonably possible, consistent with protection of constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality, and if reasonably possible a statute should be construed so as not to conflict with the constitution.” Powell v. State, 345 So.2d 724, 725 (Fla.1977). Second, “[w]ords used by the legislature are to be construed in their ‘plain and ordinary sense.’ ” Reino v. State, 352 So.2d 853, 860 (Fla.1977) (quoting Pedersen v. Green, 105 So.2d 1 (Fla.1958)).
Applying these principles to section 777.03, we hold that “consanguinity” and “affinity” are synonymous with “blood” and “marriage.” These everyday definitions preserve the underlying legislative purpose of safeguarding the family unit from conflicting loyalties and, at the same time, obviate the “absurdities” envisioned by the trial court. Also, this construction is consistent with the well known maxim that “courts will not ascribe to the Legislature an intent to create absurd or harsh consequences, and so an interpretation avoiding absurdity is always preferred.” City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla.1950).
The purpose of the modifying phrase “by consanguinity or affinity” (by blood or marriage) is to expand the statute’s list of relatives to include “in-laws” and “step-relatives.” In addition to the list of blood relatives, the statute also immunizes parents-in-law, grandparents-in-law, children and grandchildren-in-law, brothers-in-law, and sisters-in-law. Additionally, the statute immunizes various step-relatives, e.g., step-parents, step-brothers and sisters and step-children. In other words, the phrase “by consanguinity or affinity” is merely a substitute for a cumbersome listing of “in-laws” and “step-relatives” who are entitled to the statute’s protection. Thus, we hold that section 777.03, Florida Statutes (1981), is not void for vagueness; its list of protected relatives is sufficiently definite so that people of common understanding and intelligence need not guess at its meaning. See State v. Rodriquez, 365 So.2d 157 (Fla.1978).
Next, we turn to the trial court’s holding that the statute violates the Equal Protection Clause. Essentially, the court concluded that the statute draws an arbitrary and irrational line among those individuals who are granted immunity from prosecution. This conclusion was predicated on the finding that the statute’s classification does not, in every potential application, demonstrate a substantial and reasonable relationship to the promotion and preservation of the family structure. Again, we respectfully disagree.
The United States Supreme Court set forth the basic principles of equal protection analysis in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1910):
1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.
*65 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.
3. When the classification in such a law is called in question, if any state of facts reasonable can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.
Given this scope of review, a court cannot object to a statutory classification merely because a more precise line could be drawn to effectuate the act’s underlying policy. Hamilton v. State, 366 So.2d 8 (Fla.1978). Rather, the court must limit its inquiry to whether there is a rational basis for the statutory classification. In our view, section 777.03 fully satisfies this test. The statute represents a legislatively determined balance between two competing societal interests. The first is society’s interest in apprehending suspected offenders. The second is society’s interest in safeguarding the family unit from unnecessary fractional pressures. Section 777.03 achieves a balance between these two goals by restricting its application to a select group of family members and by conferring immunity so that these individuals need never choose between love of family and obedience to the law.[4]
Furthermore, the statute is not defective because it fails to immunize all relatives. Where the state attempts to achieve a balance between two reasonable, but conflicting policies, it “may take one step at a time” without violating equal protection guarantees. Geduldig v. Aiello, 417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974). There is no merit to the claim that a classification which rationally furthers the State’s purpose is arbitrary simply because the “line drawn by a legislature leaves some out that might well have been included,” Village of Belle Terre v. Boraas, 416 U.S. 1, 8, 94 S.Ct. 1536,1540, 39 L.Ed.2d 797 (1974), or that the line drawn includes some who do not merit inclusion. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976). Put another way, section 777.03, Florida Statutes (1981), is not defectively underinclusive because some relatives who might be motivated to aid an offender because of family ties are not exempted from prosecution. Conversely, the statute is not fatally overinclusive because some immunized family members might render assistance to an offender for reasons other than familial affection.
In the final analysis, it must be remembered that section 777.03 does not involve a fundamental familial right. Cf. Moore v. City of East Cleveland, 431 U.S. 494,499, 97 S.Ct. 1932, 1936, 52 L.Ed.2d 531 (1977). If the Legislature had chosen not to enact section 777.03, no one could maintain that there is a constitutionally protected right to hide or give other assistance to a fugitive simply because of a blood or marital relationship. This is the crux of today’s decision. Section 777.03, Florida Statutes (1981), immunizes criminal conduct. And since the statute’s narrow classification is predicated on a rational state policy, it is not open to expansion or re-evaluation by the judicial branch. “[0]ur duty [is] to give *66 effect to legislative enactments despite any personal opinions as to their wisdom or efficacy. No principle is more firmly embedded in our constitutional system of separation of powers and checks and balances.” Moore v. State, 343 So.2d 601, 603-04 (Fla. 1977).
To summarize, we reverse the order of dismissal because we find that section 777.-03, Florida Statutes (1981), is neither unintelligibly vague in violation of the Due Process Clause, nor irrationally conceived in violation of the Equal Protection Clause. Thus, the order on appeal is reversed and the cause is remanded for further proceedings consistent with this opinion.
GLICKSTEIN and DELL, JJ., concur.

.A violation of the Due Process Clause of the federal and state constitutions. U.S.Const. amends. V & XIV, § 1; Fla. Const, art. I, § 9.

. U.S. Const, amend. XIV, § 1; Fla. Const, art. I, § 2.

. Affinity is distinguished into three kinds: (1) Direct, or that subsisting between the *64 husband and his wife’s relations by blood, or between the wife and the husband’s relations by blood; (2) secondary, or that which subsists between the husband and his wife’s relations by marriage; (3) collateral, or that which subsists between the husband and the relations of his wife’s relations.

. The courts as well as the legislative branch have crafted multiple decisions to further the state interest of protecting the family unit. For example, in Hill v. Hill, 415 So.2d 20 (Fla.1982), the Supreme Court ruled “that the protection of the family unit and its resources requires us to answer the question [whether Florida should eliminate interspousal immunity for intentional torts] in the negative. Id. at 21. The court noted that “[t]he family continues to be an unofficial sociological governmental structure necessary and vital to our free, independent society.... Protection of the family unit is a significant public policy and we are greatly concerned by any intrusion that adversely affects the family relationship or the family resources.” Id. at 23.