## 76799. RUSSELL v. THE STATE.

(372 SE2d 445)

Deen, Presiding Judge.

The events of the instant case dramatically illustrate the stark truth underlying the poetic adage, ". . . Hell [has no] fury like a woman scorned." Appellant Carol Star Russell, who admittedly believed that "diamonds are a girl's best friend" if and only if they are bought at Tiffany or Maier & Berkele, was rejected by her almost-fiance, David Roberson, after she had expressed in explicit terms her disdain for the engagement and wedding rings which he had proposed buying for her at Kay Jewelers. Roberson then met and subsequently married another young lady, Tammy, whose taste in jewelry was apparently not so elevated.

Approximately six weeks after her marriage to David, Tammy received, while on the job at a Gainesville, Ga., restaurant, a telephone call from appellant, who stated that she was at Tammy's residence in bed with David; she also allegedly threatened to kill Tammy. Knowing that her work telephone number was not listed in the telephone directory but was written down in her personal address book, which she kept at home, Tammy called the police and reported the likelihood that an intruder had entered her house. Police officers investigated and then summoned Tammy to the scene. As she approached the house, Tammy spotted Carol's car and alerted the police, who followed Carol and subsequently took her into custody. When Tammy

entered the house she found the premises in considerable disarray: a light fixture had been broken; the bedspread had been cut to pieces; the waterbed was slashed in several places; broken pieces of wedding crystal floated on the water which had poured forth from the now eminently unseaworthy waterbed; and the bedroom carpet was soaked. She discovered that her address book, her wedding pictures, and the receipts for her wedding and engagement rings were missing.[1] The police officer who apprehended appellant found in her possession not only Tammy's address book but also a bag containing a hammer, a pair of scissors, a knife, a pair of gloves, and two Bibles. The record is silent as to the ownership of the latter two items.

David Roberson testified, and proved by a canceled check, that he had paid $1,900 for the waterbed some sixteen months previously; he further testified that he had paid $500 for the carpeting. Both he and his wife testified that none of the damaged items had any value in their present conditions. At the close of the State's evidence defendant/appellant moved for a directed verdict of acquittal on the grounds that the State had not proven the ownership or the value of the damaged property; the motion was denied.

A Hall County jury convicted Russell of criminal damage to property in the second degree. She was sentenced to two years' imprisonment, with ten days to serve and the balance on probation, together with payment of $1,000 in restitution and mandatory participation in a mental health program. Russell appeals, enumerating as error the denial of her motion for directed verdict of acquittal on the basis of the alleged insufficiency of the evidence of ownership and the State's alleged failure to prove the value of the property. *Held*:

1. OCGA § 16-7-23 states in pertinent part: "(a) A person commits the offense of criminal damage to property in the second degree when he: (1) Intentionally damages any property of another person without his consent and the damage thereto exceeds $500.00." The victim's husband stated that he had purchased the waterbed and carpet and testified to the amount he had paid. He produced a canceled check for $1,900, with which he had paid for the waterbed. He further testified that the items were useless after Carol's depredations. This evidence established not only the ownership but the present value of the items, within the contemplation of the statute, which requires that they be worth more than $500 to warrant conviction. Cf. *Johnson v. State*, 156 Ga. App. 411 (274 SE2d 778) (1980), cert. denied, 451 U. S. 989 (101 SC 2327, 68 LE2d 848) (1981), in which this court reversed a conviction for criminal damage to property because the

---

[1] The record does not reveal whether Tammy's rings were purchased from the purveyors expressly preferred by appellant or were of a less prestigious provenance.

owner of the damaged property offered only an opinion as to its value, unsupported by any documentation.

2. Examination of the transcript and the remainder of the record reveals that the evidence was more than sufficient to authorize a jury to find appellant guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Appellant's enumeration of error is without merit.

*Judgment affirmed. Carley and Sognier, JJ., concur specially.*

CARLEY, Judge, concurring specially.

I agree that the judgment of conviction should be affirmed. However, I cannot join the majority opinion because I do not believe that humor has a place in an opinion which resolves legal issues affecting the rights, obligations, and, in this case, the liberty of citizens. The case certainly is not funny to the litigants. I concur in the judgment only.

I am authorized to state that Judge Sognier joins in this special concurrence.

ON MOTION FOR REHEARING.

It is common knowledge that one judge is not the Court of Appeals, nor can one judge speak for the Court when the merits of a case are involved. Speaking then only as the author of the majority opinion, I note that some cases, as here, involve unusual and colorful factual situations. Often, related quotations and expressions are evoked, emphasizing pithy portrayal of the points under consideration. Two famous but innocuous quotations from Alexander Pope and Dorothy Parker were included in the majority opinion here. On rehearing, in deference to appellant attorney's able articulations, and based on the other two judges' vote of "concur in the judgment only," additional comments here are affirmatively advanced.

*I*

*Colorful Quotes and Language of Levity*

Considerable precedent exists for an array of differing styles of written opinions by judges. This flexibility provides judicial independence for differing views. On page twenty-six of the current history book of the Court of Appeals, unanimously approved by all nine Judges, it is acknowledged: "Books containing compilations of decisions under such titles as 'wit and wisdom in court opinions' always include reprints from the Court of Appeals of Georgia. (See also former Court of Appeals Judge H. Sol Clark's 'Judicial Humor (?): A Personal Reminiscence,' 20 Trial 68 et seq., Association of Trial Law-

yers of America, June 1984.)"

In the latter cited article, Judge Clark observes, "In all seriousness, Appellate Judges should consider that a little levity lightens their load." He believes "A sense of humor can complement fine judicial standards" and "ward off the highly infectious disease 'black-robe-itis'," and can immunize Judges to the "abhorrent judicial ailment known as the 'divinity virus.'" He quotes Judge Harold Medina: "A judge is almost of necessity surrounded by people who keep telling him what a wonderful fellow he is, and if he once begins to believe it, he is a lost soul." (Judge Clark is former Dean of the International Academy of Trial Lawyers, former President of SCRIBES, and is acknowledged as "one of Georgia's great judges.")

Georgia's most frequently cited Appellate Judge is the illustrious and legendary Chief Justice Logan E. Bleckley. Almost every one of his written opinions contains a bit of wit as well as a word of wisdom. One of many examples is: "The groom and bride each comes within/ The circle of the other's kin;/ But kin and kin are still no more/ Related than they were before." *Central R. & Banking Co. v. Roberts*, 91 Ga. 513 (18 SE 315) (1893). See, as further examples, defining public figures "is much like trying to nail a jellyfish to the wall," *Sewell v. Eubanks*, 181 Ga. App. 545 (352 SE2d 802) (1987); "How 'bout them dawgs?," *Glennville Wood &c. Co. v. Riddlespur*, 247 Ga. 3 (276 SE2d 1) (1981); "abhors star chamber proceedings . . .; like a candle, court records hidden under a bushel make scant contribution . . . ," *Atlanta Journal & Constitution v. Long*, 258 Ga. 410 (369 SE2d 755) (1988); a lie detector in a criminal case is equated with a braying donkey, *State v. Chambers*, 240 Ga. 76, 81 (239 SE2d 324) (1977); "grand conglomerations of garbled verbiage and verbal garbage," *State Hwy. Dept. v. Price*, 123 Ga. App. 655, 657 (182 SE2d 175) (1971); in a criminal conviction of selling fresh-water crappie it was observed, "to transport a sick cat to the veterinarian; or to take a goldfish to school for 'Show and Tell'; or to haul a blue-tick hound in a pickup truck," *Maddox v. State*, 252 Ga. 198, 201 (312 SE2d 325) (1984); in a lengthy footnote, angle of repose and angle of friction of a pile of sand is discussed as mathematically and scientifically determinable, *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344 (223 SE2d 732) (1976); entire two-page opinion in a civil case written in verse, *Wheat v. Fraker*, 107 Ga. App. 318 (130 SE2d 251) (1963); entire four-page opinion in a criminal case written in verse, *Brown v. State*, 134 Ga. App. 771 (216 SE2d 356) (1975); the last five sentences in the opinion discuss the virtue of two ladies as they wrangle over possession of a diamond ring, *Mewborn v. Weitzer*, 15 Ga. App. 668 (84 SE 141) (1914); four-page poem about golden calf of precedent, *Van Kleeck v. Ramer*, 62 Col. 4, 42-46 (1916). See also 182 Ga. App. L, and Rogers, *Opinions & Stories of & from the Ga. Courts & Bar* (Oxford, NH: Equity Pub. Corp.,

1973); Hall, *"Judicial Sayings of Justice Glenn Terrell"* (Atlanta: The Harrison Co., 1964); and Ga. Bar Assn., "Logan E. Bleckley" (Macon: Mercer Univ. Press, 1982), for a collection of many other examples of opinions containing language of levity.

## II

### Seriousness of Judicial Review

This appeal was based on (A) the alleged failure of the State to prove the value of the property said to have been damaged, and (B) the general grounds. This case is an important case, and the appeal filed is not a frivolous appeal. The majority opinion reflects a detailed study and outline of the facts in the case. Careful and serious consideration has been given to both errors enumerated. All cases cited in the briefs have been read and reviewed. Applicable statute and case law, and reasoning based thereon, is provided in the opinion supporting each division and the holdings in the case. The majority and special concurrence in this case have been officially reported and are open to public scrutiny.

Compare this detailed treatment and careful review by the majority opinion in the instant case with other criminal cases where only a sentence or so is provided as a majority opinion, where no facts or law are discussed, and the case is not considered worthy of publication or of being officially reported: robbery with a sawed-off shotgun, *Carter v. State* (Case No. 76615, decided by the Court of Appeals July 12, 1988); robbery by a gun, *Wilcox v. State*, (Case No. 76426, decided by the Court of Appeals July 12, 1988); husband stabbing his hospitalized wife 13 times with a knife, *Collins v. State* (Case No. 76730, decided by this court on July 15, 1988).

Concurring in the judgment only (J/O) is a legitimate vote and is widely used under our Rule 35. Seemingly, however, our court has set an all-time record in its use during the year 1987. In criminal cases where rights and liberties are at stake, J/O's should be used sparingly. Staid, sedate, and even stodgy opinions are superior to scanty, shallow, swift, short-shrift J/O votes or opinions, whether issued in civil or criminal cases. The J/O tells the litigant little or nothing about the case, or, seemingly, provides not even the time of day. This treatment "certainly is not funny to the litigants" and bodes ill to serious appellate review of cases.

DECIDED JULY 7, 1988 —
REHEARING DENIED SEPTEMBER 6, 1988

*Stanley W. Robbins, James H. Whitmer*, for appellant.

C. *Andrew Fuller, District Attorney, Daniel A. Summer, Assistant District Attorney*, for appellee.