709 A.2d 845

STATE OF NEW JERSEY v. TIMOTHY BROWN, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Mercer County

Decided June 19, 1997.

*Dorothy Hersh*, Assistant Prosecutor, for the State (*Maryann K. Bielamowicz*, Mercer County Prosecutor, attorney).

*Lewis N. White, III*, for defendant.

POGARSKY, J.S.C.

## PRELIMINARY STATEMENT

On Feb. 16, 1997, a Mercer County Grand Jury returned Indictment No. 96–02–0214 charging defendant with sexual assault (Counts 1 through 8), contrary to *N.J.S.A.* 2C:14–2c; and criminal sexual contact (Counts 9 through 20), *contrary* to *N.J.S.A.* 2C:14–3b. The defendant pled not guilty to those charges and now moves to dismiss certain counts of the indictment.

## STATEMENT OF FACTS

On June 25, 1995, at approximately 1:30 A.M., K.M.F., born June 9, 1979, had just gone to bed in her third-floor bedroom at her residence on Brunswick Avenue in Trenton. Her stepbrother, defendant Timothy Brown, came into her room and asked if he could watch television in her room, and then if he could sleep in her bed. At that time, K.M.F.'s natural mother was married to defendant's natural father, making K.M.F. and the defendant stepsister and stepbrother.

K.M.F. allowed defendant to sleep on one side of the bed while she remained on the other side. As she tried to go to sleep, she felt him moving about, felt him moving closer to her, and then felt him rubbing her body and putting his hands inside her shirt and bra to rub her breasts. He then forcibly performed cunnilingus on K.M.F. despite her resistance. After forcing K.M.F. to engage in cunnilingus, defendant penetrated her vaginally with his penis. At the conclusion of the vaginal intercourse, defendant ejaculated on K.M.F.'s stomach.

Defendant then left the room, and K.M.F. went to take a shower. She stayed in the bathroom for approximately one hour, after which she called her friend and told her what happened. K.M.F. tried to go to sleep, but at approximately 7:30 A.M., defendant returned to her room and asked if she wanted to do it again. K.M.F. said that she did not, and that she was sore from the first time. Nonetheless, defendant again forcibly rubbed her breasts, performed cunnilingus upon her, and then forced her to engage in vaginal intercourse.

These incidents were finally reported to K.M.F.'s parents on June 28, 1995, and the police were subsequently notified. K.M.F. explained that she waited until June 28, 1995 to report the assaults because she was afraid of what might happen between her parents since defendant was her stepfather's son. She also indicated that she was trying to forget what had happened to her.

## LEGAL ARGUMENT

The defendant moves to dismiss Counts 3, 4, 7, 8, 12, 13, 14, 18, 19 and 20 of the indictment because he is not related to the victim by blood or affinity to the third degree. The defendant and the victim are not related by blood; thus, the issue presented is whether the step relationship is included in the definition of "affinity."

The applicable statute, *N.J.S.A.* 2C:14–2c, provides that

An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:

(4) The victim is at least 16 but less than 18 years old and:

(a) The actor is related to the victim by blood or affinity to the third degree. . . .

*N.J.S.A.* 2C:14–3b provides that "An actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in N.J.S.A. 2C:14–2c (1) through (5)." Therefore, *N.J.S.A.* 2C:14–2c(4)(a) and *N.J.S.A.* 2C:14–3b prohibit sexual penetration and sexual contact, respectively, where the victim is 16 or 17 years old and the victim and the actor are related by blood or affinity to the third degree.

The term "affinity" is not defined in the statute or comments. Furthermore, there is no New Jersey case which interprets its definition. *N.J.S.A.* 2C:1–2c provides "[t]he provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved."

The *American Heritage Dictionary,* (Second College Edition) defines affinity as "relationship by marriage." Further, Webster's *New Universal Unabridged Dictionary* (Second Edition) defines affinity as "the relation contracted by marriage." Finally, *Black's Law Dictionary* defines affinity as the relation which one spouse because of marriage has to blood relatives of another.

For additional help, the defendant urges this Court to look to the Comments to *N.J.S.A.* 2C:24–2, although the Legislature did not adopt that section. The proposed section would have prohibited incest. The Comments to the proposed *N.J.S.A.* 2C:24–2 encompass the relationship between the victim and defendant in this case. Further, the defendant argues that the Legislature adopted the incest provisions in *N.J.S.A.* 2C:14–2a(2)(a). Therefore, the Comments to *N.J.S.A.* 2C:24–2 are instructive in defining "affinity."

The Comments indicate that *N.J.S.A.* 2C:24–2 would not have prohibited marriage or sexual intercourse between an adoptive brother and sister. The Commissioners envisioned potential problems, due to sexual freedom, between step parents and step children, and between adoptive parents and children. Such a relationship, even within an artificial family, would disrupt family unity and would constitute a breach of the parent's duty to guide the child into satisfactory adult sexual adjustment. However, the Commissioners also envisioned "cases which involve neither illicit relationship nor exploitation," so the statute excluded those relationships. The Commission commented that:

The case of adoption is somewhat different inasmuch as the law here is attempting to duplicate, so far as possible, the structure of the natural family. We prohibit marriage between adoptive parent and child but stop at that point. It is certainly inadvisable to carry the incest conception so far as to make it a crime for an adoptive uncle and niece to marry and we put adoptive brothers and sisters in the same category.

Under the defendant's argument, the comments to a statute that the Legislature did not adopt should help define a word in a statute that the Legislature did adopt. That concept is troublesome, because we do not know whether the Legislature refused to enact the incest statute because of the principles outlined in the Comments or because other statutes already prohibited acts that the incest statute sought to prohibit. Moreover, that argument would lead to an unreasonable conclusion in this case.

The Comments to *N.J.S.A.* 2C:14–2c(4) and (5) indicate that the age of the victim is the critical element, and refers the reader to Comment 2 dealing with N.J.S.A. 2C:14–2a(1) and (2). Those Comments state that "where young victims are involved, the legislature has chosen to criminalize separately those offenses committed by family members and those committed by strangers." Furthermore, "where sexual penetration is an aggravated assault because the actor stands within a certain blood or affinity relationship to a young victim, the prohibited relationship includes uncles and aunts by blood or marriage." Comment 2 to *N.J.S.A.* 2C:14–2a(1) and (2); *See* 23 *Am.Jur.*2d, Descent and Distribution secs. 52, 55 (1983).

Defendant argues that *N.J.S.A.* 2C:14–2c(4)(a) and 2C:14–3 do not, and should not, prohibit a sexual relationship between a young girl and her stepbrother. However, that conclusion is unreasonable where, as here, those statutes prohibit such a relationship between a 16 or 17 year old girl and an uncle by marriage, who may not be a member of the child's household, while not criminalizing a sexual assault by a step sibling who is more likely to reside in the child's home. Therefore, it is reasonable to interpret the word affinity, as the State does, to prohibit a

sexual relationship between a 16 or 17 year old girl and her stepbrother.

Furthermore, in *People v. Armstrong,* 212 *Mich.App.* 121, 536 *N.W.*2d 789 (1995), the defendant was the step-brother of the victim. The defendant argued that the word "affinity," as used in Michigan's criminal sexual conduct statute, did not encompass the relationship of stepbrother and stepsister. The court disagreed. Noting that the term "affinity" is not capable of precise definition, the court reasoned that whether someone was related to another by affinity depended upon the legal context presented. *Id.* at 125, 536 *N.W.*2d at 792.

In interpreting the term "affinity," the court found that the term should be construed according to its common and approved usage, and that resorting to the dictionary was appropriate for that purpose. *Id.* at 127, 536 *N.W.*2d at 792. The *Random House College Dictionary* (rev. ed.) indicates that the common, ordinary meaning of "affinity" is marriage, and that "step" is defined as "a prefix used in kinship terms denoting members of a family related by the remarriage of a parent and not by blood." Therefore, the court found that the defendant and the victim were related by affinity because they were family members related by marriage. *Id.* at 128, 536 *N.W.*2d at 793.

Furthermore, the court looked to legislative intent for assistance. The court found that the legislature intended to protect young persons from sexual contact by persons with whom they have a special relationship, such as relatives. *Id.* at 128, 536 *N.W.*2d at 793. Looking to the particular legislative intent and the harm that the statute is designed to remedy, and in applying a reasonable construction that best accomplishes that purpose, the Michigan Court concluded that the term "affinity" encompasses the relationship between a stepbrother and stepsister. *Id.* at 128, 536 *N.W.*2d at 793.

The court noted that if "affinity" were not so construed, the criminal sexual conduct statute would impose a more severe penalty where the actor assaulted a spouse's brother or sister than

where the actor assaulted a stepbrother or stepsister. The court questioned whether the Legislature would give enhanced protection to a victim related to a perpetrator as an in-law but not to a victim related to a perpetrator as a stepbrother or stepsister. Thus, the Michigan Court interpreted "affinity" to encompass the relationship between a stepbrother and stepsister, thereby avoiding a construction of the criminal sexual conduct statute that would yield absurd results. *Id.* at 128–29, 536 *N.W.*2d at 793.

Similarly, the definition of "affinity" that the defendant urges would yield an absurd result. The Legislature intended to provide young people with enhanced protection from assaults by family members. Therefore, this court interprets *N.J.S.A.* 2C:14–2c(4)(a) and the word "affinity" to encompass the relationship of stepbrother and stepsister.

Accordingly, the defendant's motion to dismiss Counts 3, 4, 7, 8, 12, 13, 14, 18, 19, and 20 of the indictment is denied.