346 P.3d 30

**Sammantha ALLEN, Petitioner,**

v.

**The Honorable Teresa A. SANDERS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**State of Arizona, Real Party in Interest.**

**No. 1 CA–SA 14–0256.**

Court of Appeals of Arizona, Division 1.

April 2, 2015.

Maricopa County Legal Defender's Office, by John Ronan Curry, Jeremy L. Bogart, Phoenix, for Petitioner.

Maricopa County Attorney's Office, by Lisa Marie Martin, Phoenix, for Real Party in Interest.

Colleen Clase, Tempe, for Amicus Curiae Arizona Voice for Crime Victims.

Margaret Garvin, Portland, Oregon, for Amicus Curiae National Crime Victim Law Institute.

Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Presiding Judge MARGARET H. DOWNIE and Judge RANDALL M. HOWE joined.

## OPINION

NORRIS, Judge:

¶ 1 When the victim of a criminal offense is killed, Arizona's Victims' Bill of Rights ("VBR") allows "any other person related to the [deceased victim] by consanguinity or affinity to the second degree" to be treated as the victim. The issue in this special action concerns the meaning of "affinity."

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 A grand jury indicted Petitioner, Sammantha Allen, for first-degree murder, conspiracy to commit child abuse, and child abuse arising out of the death of "AD." According to the State, "KD" witnessed Allen abusing AD. KD is the biological child of

David and his first wife. After David and his first wife divorced, David married Shirley. Shirley gave birth to AD after she married David, but David was not AD's biological father.

¶ 3 After the State informed Allen it intended to call KD as a trial witness, Allen's attorney asked the State to arrange an interview of KD. The State refused to do so, asserting KD's relationship to AD made KD a "victim" under the VBR, *see generally* Ariz. Rev.Stat. ("A.R.S.") § 13–4401 to –4440 (2010 & Supp.2014), and therefore, KD was entitled to refuse to be interviewed. *See generally* A.R.S. § 13–4433(A) (Supp.2014) ("victim" may refuse to submit to defense interview request in criminal proceeding).[1] Under the VBR, a "victim" is a person "against whom [a] criminal offense has been committed...." A.R.S. § 13–4401(19) (Supp.2014). But when, as here, the crime victim is killed, the VBR allows "any other person related to the [deceased victim] by consanguinity or affinity to the second degree" to be treated as the victim. *Id.* In full, the VBR defines victim as:

> [A] person against whom the criminal offense has been committed, including a minor, or if the person is killed or incapacitated, the person's spouse, parent, child, grandparent or sibling, any other person related to the person by consanguinity or affinity to the second degree or any other lawful representative of the person, except if the person or the person's spouse, parent, child, grandparent, sibling, other person related to the person by consanguinity or affinity to the second degree or other

lawful representative is in custody for an offense or is the accused.

*Id.*

¶ 4 Allen, through counsel, moved to compel KD's deposition, and, as relevant here, argued KD was not a victim under the VBR because she was not a "person related to [AD] by consanguinity or affinity to the second degree." The superior court disagreed, reasoning that because AD was related by affinity to David, and KD was related by affinity to Shirley, AD and KD were related by affinity to each other. Accordingly, the court denied Allen's motion. Allen then filed this special action.

## JURISDICTION

¶ 5 In the exercise of our discretion, we accept special action jurisdiction. Allen has no equally plain and speedy remedy by appeal, *see* Ariz. R.P. Spec. Act. 1(a), and the question presented here is one of law, subject to de novo review. *See State ex rel. Montgomery v. Harris,* 234 Ariz. 343, 344, ¶ 8, 322 P.3d 160, 161 (2014); *Guthrie v. Jones,* 202 Ariz. 273, 274, ¶ 4, 43 P.3d 601, 602 (App. 2002).

## DISCUSSION

¶ 6 AD was not biologically related to KD, and thus, they were not related by consanguinity, which is the relationship that exists by blood (for example, between a brother and sister or a mother and son). Accordingly, the only issue we must decide concerns the meaning of "affinity" as used in the VBR.

¶ 7 The VBR does not define affinity. *See* A.R.S. § 13–4401. Indeed, the Legislature has never defined affinity, even though it has used that term in numerous statutes.[2] At

---

1. Although the Arizona Legislature has amended certain statutes cited in this opinion after the dates of Allen's alleged offenses, the revisions are immaterial to the resolution of this special action. Thus, we cite to the current version of these statutes.

2. *See generally* A.R.S. § 13–2319(F)(1) (Supp. 2014) (smuggling; classification; definitions; " 'Family member' means the person's parent, grandparent, sibling or any other person who is related to the person by consanguinity or affinity to the second degree."); A.R.S. § 21–211(3) (2013) (disqualification of jurors; "Persons related by consanguinity or affinity within the fourth

degree to either of the parties to the action or proceedings."); A.R.S. § 32–2104(B)(4) (Supp. 2014) (real estate advisory board; "Three public members who are not related within the third degree of consanguinity or affinity to any person holding a broker's or salesperson's license from this state."); A.R.S. § 32–3604(B)(2) (Supp.2014) (state board of appraisal; "Three public members who are not related within the third degree of consanguinity or affinity to any real estate appraiser."); A.R.S. § 36–3001(3) (2014) (shelters for domestic violence victims; definitions; " 'Family or household member' means a spouse, a former spouse, a parent, a child or other adult person related by consanguinity or affinity....");

common law, however, affinity had a well understood, specialized meaning. When, as here, the Legislature uses a word that has a well-known and definite meaning at common law, we will presume the Legislature used the word as it was understood at common law, and we will construe it accordingly absent some other special meaning apparent from the text. *See* A.R.S. § 1–213 (2002) ("Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."); *McCulloch v. W. Land & Cattle Co.*, 27 Ariz. 154, 158, 231 P. 618, 619 (1924); *State v. Barr*, 183 Ariz. 434, 438, 904 P.2d 1258, 1262 (App.1995).

¶ 8 At common law, "affinity" was traditionally defined as the "connection existing in consequence of a marriage, between each of the married persons and the kindred of the other." [3] *State v. Ramsey*, 171 Ariz. 409, 411, 831 P.2d 408, 410 (App.1992); *see also Tencza v. Aetna Cas. & Sur. Co.*, 21 Ariz. App. 552, 554, 521 P.2d 1010, 1012 (1974) (affinity is "the relationship by marriage between a husband and his wife's blood relations or between a wife and her husband's blood relations." (internal quotation marks omitted)), *vacated on other grounds*, 111 Ariz. 226, 527 P.2d 97 (1974); Op. Ariz. Att'y Gen. 77–135 (interpreting Arizona's anti-nepotism statute, A.R.S. § 38–481; "most common definition of affinity is that relationship which exists, as a result of marriage, between each spouse and the blood relatives of the other spouse"); [4] *Norris v. Presley*, 292 Ala. 155, 290 So.2d 643, 645 (1974) ("Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and the blood relatives of the husband."); *Garrett v. State*, 203 Ga. 756, 48 S.E.2d 377, 386 (1948) ("A husband is related by affinity to the blood relatives of his wife...."); *Kitchens v. Pool*, 146 Ga. 229, 91 S.E. 81, 82 (1916) ("Marriage will relate the husband by affinity to the wife's blood relations...."); *State v. Hooper*, 140 Kan. 481, 37 P.2d 52, 64 (1934) ("Affinity is the relation which one spouse, because of the marriage, has to the blood relatives of the other."); 41 Am.Jur.2d *Husband and Wife* § 4 (2015) ("'Affinity' is defined as a legal relationship which arises as the result of marriage between each spouse and the consanguinal relatives of the other."). Thus, under the common law, an affinity relationship exists between one spouse and the other spouse's blood relatives.

¶ 9 To illustrate the application of the traditional common law definition of affinity using the facts here, because David and Shirley were married to each other, David was related by affinity to Shirley's blood relations (her parents, any siblings, and her child, AD), and Shirley was related by affinity to David's blood relations (his parents, any siblings, and his child, KD).

¶ 10 But, under the traditional common law definition of affinity, an affinity relationship does not exist between the blood relations of one spouse and the blood relations of the other spouse. *Kirby v. State*, 89 Ala. 63, 8 So. 110, 111 (1890) ("[T]here is no affinity between the blood relatives of the husband and the blood relatives of the wife."); *Central R.R. & Banking Co. of Ga. v. Roberts*, 91 Ga. 513, 18 S.E. 315, 315–16 (1893) ("Marriage will relate the husband, by affinity, to the wife's blood relations, but will not relate the husband's brother to any of her rela-

---

A.R.S. § 38–481(A) (2011) (employment of relatives; violation; classification; definition; "It is unlawful ... for an executive, legislative, ministerial or judicial officer to appoint ... any person related to him by affinity or consanguinity within the third degree...."); A.R.S. § 48–802(D)(2) (Supp.2014) (election procedures; qualifications; "[A] person is not eligible to be a candidate for election ... if that person is related by affinity or consanguinity within the third degree to a person who serves on the board during the potential candidate's term of office."); A.R.S. § 48–805.03(A)(*I*) (Supp.2014) (employment of relatives; violation; classification; "It is unlawful for an elected or appointed officer or employee

of a fire district to ... [a]ppoint or vote for appointment of any person who is related to that officer or employee by affinity or consanguinity within the third degree....").

3. "Kindred" is a variant of the word "kinship" and refers to blood relatives. *State v. Ramsey*, 171 Ariz. 409, 411, 831 P.2d 408, 410 (App. 1992).

4. *See Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 158 n. 3, ¶ 8, 318 P.3d 871, 874 n. 3 (App.2014) (Attorney General Opinions, while advisory, may be cited for persuasive value).

tions."); *Hooper*, 37 P.2d at 64 ("Blood relations of the husband and the blood relations of the wife are not related to each other by affinity."); *McLendon v. State*, 187 Miss. 247, 191 So. 821, 822 (1939) ("[T]here is no affinity between the blood relations of the husband and the blood relations of the wife."); *Smith v. Associated Natural Gas Co.*, 7 S.W.3d 530, 535 (Mo.Ct.App.1999) ("[A]ffinity . . . will not relate the *husband's brother* to any of [the wife's] relations."); *Reilly by Reilly v. Se. Pa. Transp. Auth.*, 330 Pa.Super. 420, 479 A.2d 973, 983–84 (1984) ("[A]t common law the blood relatives of one spouse are not related by affinity to the blood relatives of the other spouse."); *Cortez v. State*, 144 Tex. Crim. 116, 161 S.W.2d 495, 497 (App.1942) ("The groom and bride each come within[ t]he circle of the other's kin, [b]ut kin and kin are still no more [r]elated than they were before."); 41 Am.Jur.2d *Husband and Wife* § 4 (2015) ("Each spouse is related by affinity to the blood relations of the other in the same degree as the other, but the blood relations of one spouse are not, by reason of the marriage, related by affinity to the blood relations of the other. . . ."). Applying this rule here, David's blood relations (his parents, any siblings, and his child, KD) and Shirley's blood relations (her parents, any siblings, and her child, AD) were not themselves related by affinity. Accordingly, under the traditional common law definition of affinity, KD and AD were not related by affinity. Thus, under the VBR, KD is not a victim because she was not a "person related to [AD] by . . . affinity." *See* A.R.S. § 13–4401(19).

¶ 11 The superior court reasoned that because AD was related by affinity to David and KD was related by affinity to Shirley, AD and KD were related to each other by affinity. But marriage does not create an affinity relationship between the blood relations of one spouse and the blood relations of the other spouse.

¶ 12 Although at oral argument in this court the State agreed that under the common law definition of affinity KD would not be a victim, the State, joined by amicus, nevertheless argues that because the Legislature has directed that the VBR should be liberally construed, *see* A.R.S. § 13–4418 (2010), and has amended the definition of victim over the years to broaden it beyond a crime victim's immediate family,[5] we should define affinity broadly, as being synonymous with marriage.

¶ 13 Although we acknowledge we must construe the VBR liberally and the Legislature has broadened the definition of victim over the years, we do not agree with the State's argument that when the Legislature amended the VBR to include affinity relationships it actually intended to refer to other associations that may exist because of a marriage.[6] Indeed, to accept the State's argument, we would have to ignore another provision in the VBR's definition of victim.

¶ 14 Specifically, the Legislature did not simply define "victim" as including any other person related to the deceased victim by affinity, or for that matter, consanguinity. Instead, it specified that the "other person" had to be related to the deceased victim by "consanguinity or affinity to the second degree." A.R.S. § 13–4401(19). A degree of affinity, like a degree of consanguinity, is a unit for measuring the proximity of one per-

5. Initially, the VBR defined "victim" to include a deceased or incapacitated person's "spouse, parent, child or other lawful representative." 1991 Ariz. Sess. Laws, ch. 229, § 7 (1st Reg.Sess.). In 2001, the Legislature amended the definition to include the deceased or incapacitated person's "immediate family," which it defined as "spouse, parent, child, sibling, grandparent or lawful guardian." 2001 Ariz. Sess. Laws, ch. 334, § 22 (1st Reg.Sess.). In 2005, the Legislature amended the definition of victim to its current version. 2005 Ariz. Sess. Laws, ch. 325, § 6 (1st Reg. Sess.).

6. In making this argument, the State relies on cases from other jurisdictions in which the courts construed affinity as being synonymous with marriage. *See State v. C.H.*, 421 So.2d 62 (Fla.Dist.Ct.App.1982); *People v. Armstrong*, 212 Mich.App. 121, 536 N.W.2d 789 (1995); *State v. Brown*, 311 N.J.Super. 273, 709 A.2d 845 (N.J.Super. Ct. Law Div.1997). We find those cases distinguishable. In those cases, the courts applied what they characterized as "everyday definitions," *C.H.*, 421 So.2d at 64, or "common," "ordinary meaning[s]" to the word "affinity." *Armstrong*, 536 N.W.2d at 793; *Brown*, 709 A.2d at 847–48. That approach is inconsistent with the approach we are directed to apply by Arizona statute and case law. *See supra* ¶ 7.

son's relationship to another. *See Black's Law Dictionary* (10th ed.2014); *see also Graham Cnty. v. Buhl,* 76 Ariz. 275, 276–79, 263 P.2d 537, 538–39 (1953) (explaining methods of calculating degrees of consanguinity). Thus, state statutes refer to "affinity within the fourth degree" or "consanguinity ... to the second degree." *See supra* ¶ 7 and footnote 2. By linking affinity to a specific unit of measure, the Legislature further demonstrated its intent to adopt the traditional common law definition of affinity.

## CONCLUSION

¶ 15 For the foregoing reasons, we agree with Allen that under the VBR, KD was not related to the deceased victim, AD, by "affinity to the second degree." Therefore, the superior court should not have denied Allen's motion to depose KD. Accordingly, we grant relief and direct the superior court to order KD to submit to a defense interview.